**Edward O. GOODRICH, on behalf of himself and all others similarly situated, Plaintiff Below, Appellant,**

v.

**E.F. HUTTON GROUP, INC., and E.F. Hutton Group & Company, Inc., Defendants Below, Appellees.**

No. 360, 1995.

Supreme Court of Delaware.

Submitted: June 16, 1996.
Decided: Aug. 26, 1996.

See also, 542 A.2d 1200.

Pamela S. Tikellis of Chimicles, Jacobsen & Tikellis, Wilmington, and C. Oliver Burt, III (argued), of Burt & Pucillo, West Palm Beach, FL, for appellant.

Allen M. Terrell of Richards, Layton & Finger, Wilmington, for appellees.

Lawrence A. Hamermesh (argued), of Widener University School of Law, Wilmington, as amicus curiae.

Before WALSH, HOLLAND, BERGER, JJ., DUFFY and HORSEY, retired Justices [1] (constituting the Court en Banc).

HOLLAND, Justice:

The plaintiff-appellant, Edward O. Goodrich ("Goodrich"), was certified as the class representative in an action against the defendants-appellees, E.F. Hutton Group, Inc. and E.F. Hutton Group & Company, Inc. (collectively "E.F. Hutton"). The Court of Chancery approved a proposed settlement of this class action as "fair, reasonable, and adequate for the settlement of all claims asserted herein." It also awarded attorney's fees in an amount "equal to one-third of the gross amount paid out to claimants not to exceed $515,000, plus interest on the amount paid as a fee...." Goodrich appeals from the Court of Chancery's attorney's fee award.

In this appeal, Goodrich's sole contention is that $515,000 in attorney's fees should have been awarded unconditionally and paid immediately. Goodrich argues that the Court of Chancery either committed legal error, or abused its discretion, in awarding and disbursing attorney's fees as a percentage of the gross amount paid out to class members. Hutton advised this Court that it would take no position in this appeal with regard to Goodrich's request for an award of

---

1. Sitting by designation pursuant to Supreme Court Rule 2 and DEL. CONST. art. IV §§ 12 and 38.

attorney's fees, having agreed not to take a position on that issue in the Court of Chancery.

Thus, this is one of those relatively rare cases, in which it was ·necessary to appoint an attorney "to uphold the side of a question that no party before the Court is willing to advocate." *Maurer v. International Re–Insurance Corp.*, Del.Supr., 95 A.2d 827, 831 (1953). Such an advocate is properly paid from the fund at issue. *Id.* This Court appointed Lawrence A. Hamermesh, Esquire, as an *"amicus curiae* for the purpose of briefing and presenting argument in support of the decision of the Court of Chancery." The Court is grateful for the valuable service he rendered in this appeal.

This Court has concluded that the Court of Chancery properly applied established equitable precepts. The attorney's fee awarded to Goodrich's attorneys is supported by the record and the product of a logical deductive process. The judgment of the Court of Chancery is affirmed.

### History of Litigation

Goodrich commenced this action on November 27, 1985 on behalf of a class of customers of E.F. Hutton who had received funds from E.F. Hutton. The funds were received during the period since July 1, 1980. The funds were paid by means of checks· drawn on accounts maintained in banks located more than 500 miles from the E.F. Hutton office in which the customer transacted business. The complaint charged E.F. Hutton with a wrongful scheme to delay or withhold funds from its customers in order to gain the interest-free use of the money during the period of delayed payment. This conduct was alleged to have violated common law doctrines of fraud and agency; the Delaware Consumer Fraud Act; and to have constituted conversion, breach of contract, and a breach of fiduciary duty to the customers.

The Court of Chancery granted E.F. Hutton's motion to dismiss the complaint as to all claims except the alleged breach of fiduciary duty. *Goodrich v. E.F. Hutton Group, Inc.*, Del.Ch., 542 A.2d 1200 (1988). By order dated April 16, 1993, the Court of Chancery certified the following two subclasses:

All E.F. Hutton & Company, Inc. ("Hutton") customers, both persons and institutions, who received funds from Hutton during the period from July 1, 1980 through November 26, 1982, by means of checks drawn on a Hutton account maintained at the Bank of America, who lived outside of California and dealt with a Hutton office outside of California at the time they received such checks.

All E.F. Hutton & Company, Inc. ("Hutton") customers, both persons and institutions, who received funds from Hutton during the period from November 27, 1982, through July 19, 1987, by means of checks drawn on a Hutton account maintained at the Bank of America, who lived outside of California and dealt with a Hutton office outside of California at the time they received such checks.

### Settlement Agreement

On May 11, 1995, the parties submitted a Stipulation of Settlement (the "Settlement") to the Court of Chancery. Under the terms of the Settlement, E.F. Hutton agreed to pay $3.3 million into an interest-bearing escrow account. It was agreed that the escrow account would be "maintained jointly" by counsel for both the class and the defendants as "Escrow Agents."

According to the Settlement, the escrow account would be drawn upon to pay attorney's fees for the class, the costs of notice to the class, and the costs of settlement administration not to exceed $600,000, up to a combined limit of $1.1 million. With respect to the balance of the funds in the escrow account (at least $2.2 million), the Settlement provided for payment to class members, in amounts dependent upon (i) the face value of checks received from E.F. Hutton, (ii) the subclass of which the claimant was a member, and (iii) the prevailing interest rate during the year in which the check(s) were drawn. If claims by class members exceeded the funds available in the escrow account, each claimant would receive payment of a fraction of those funds equal to the ratio of the value of his claim to the total value of the claims submitted.

Pursuant to the Settlement, "No Class Member shall be entitled to participate in the distribution of the proceeds of the Settlement unless such person files an executed Proof of Claim." The Settlement adopted proof of claim requirements. In order to receive funds under the Settlement, class members were required to:

(1) Disclose their residence(s) from July 1, 1980 through July 19, 1987 (the "class period");

(2) List the checks they received from E.F. Hutton during the class period, by year, excluding checks received while a California resident and checks received, other than those drawn on the Bank of America, as a New York resident;

(3) Attach to the Proof of Claim form "documentary evidence such as confirmations, statements or any other documents showing that E.F. Hutton issued checks to the Claimant and that such checks were drawn on the Bank of America."

To the extent class members did not claim funds available in the escrow account, the Settlement established that such remaining funds were to be "returned to Defendant Hutton or its designee."

### Notice to Class

The class to which notice of the proposed Settlement was mailed consisted of approximately 581,000 persons. The notice generated many written responses. Those responses were submitted to the Court of Chancery by counsel for the class in a document entitled "E.F. Hutton Customer Compendium."

In describing these responses to the Court of Chancery, Goodrich's attorney noted many class members "complained that they lacked documentation, such as copies of their Hutton account records, necessary to submit properly documented claims forms." For example, one respondent wrote: "Because verification of receipt of E.F. Hutton checks drawn on Bank of America accounts is required for payment, smaller customers of E.F. Hutton are almost automatically excluded. Few individual investors would keep such records going back to 1982."

### Attorney Fee Award

The Court of Chancery approved the proposed settlement of this class action as "fair, reasonable, and adequate for the settlement of all claims asserted herein." See Ch.Ct.R. 23(e). Thereafter, the *ratio decidendi* for the Court of Chancery's award of attorney's fees to Goodrich's counsel was as follows:

[W]here because of the nature of the claim and the settlement there is good ground to suppose that there may well be a substantial non-claim problem, the most sensible way to compensate class lawyers, consistent with the underlying rationale for such awards, is on a contingency basis: that is to do as I did in this instance, to award a fair fee and make its payment coincide with distributions to class members.

The Court of Chancery concluded that a fee of $515,000, or about 16% of the $3.3 million paid into escrow, would be fair and reasonable if the entire $3.3 million settlement fund were distributed to class members (net of fees and expenses). *Id.;* Ch.Ct.R. 88. Conversely, the Court of Chancery determined that $515,000 would not be a fair and reasonable counsel fee award irrespective of the extent to which class members obtained cash payments pursuant to the Settlement.

The Court of Chancery decided to award to Goodrich's attorneys a fee of 33⅓% of the total amount actually paid out to class members, up to a limit of $515,000. It noted at the settlement hearing, "if anything like the entire amount gets disbursed, long before that happens, the attorneys will get the $515,000 that they seek." Specifically, if class members submitted claims amounting to only $1,545,000 of the $2.2 million potentially distributable, counsel for the class would receive $515,000 in fees.

### American Rule Attorney Fee Awards

The standards for awarding attorney's fees in litigation by the Court of Chancery are well established. *Tandycrafts, Inc. v. Initio Partners,* Del.Supr., 562 A.2d 1162, 1164 (1989). The starting principle is a recognition of the so-called "American Rule." *Walsh v. Hotel Corp. of America,* Del.Supr., 231 A.2d 458, 462 (1967); *Maurer v. Interna-*

*tional Re–Insurance Corp.,* Del.Supr., 95 A.2d 827, 830 (1953). Pursuant to the American Rule,[2] prevailing litigants are responsible for the payment of their own attorney's fees. *Walsh v. Hotel Corp. of America,* 231 A.2d at 462; *Maurer v. International Re–Insurance Corp.,* 95 A.2d at 830. *See Alyeska Pipeline Serv. Co. v. The Wilderness Society,* 421 U.S. 240, 245, 95 S.Ct. 1612, 1615–16, 44 L.Ed.2d 141 (1975).[3] The American Rule has two general categories of exceptions: fee-shifting statutes[4] and equitable doctrines. *Tandycrafts, Inc. v. Initio Partners,* 562 A.2d at 1164; *Walsh v. Hotel Corp. of America,* 231 A.2d at 462; *Maurer v. International Re–Insurance Corp.,* 95 A.2d at 830 (enumerating equitable exceptions).

### Common Fund Fees
### American Rule Exception

■ In this case, Goodrich invoked the most venerable equitable exception to the American Rule: the "common fund" doctrine (sometimes called the "equitable fund" doctrine or the "fund-in-court" doctrine). The common fund doctrine was first articulated by the United States Supreme Court in *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881). It was extended to class actions four years later in *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). The common fund doctrine is a well-established basis for awarding attorney's fees in the Court of Chancery. *See, e.g., Tandycrafts, Inc. v. Initio Partners,* 562 A.2d at 1166; *Maurer v. International Re–Insurance Corp.,* 95 A.2d at 830.

■ The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *Maurer v. International Re–Insurance Corp.,* 95 A.2d at 830. Otherwise, "persons who obtain the benefit of a lawsuit without contributing to its cost [freeriders] are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert,* 444 U.S. at 478, 100 S.Ct. at 749; *Tandycrafts, Inc. v. Initio Partners,* 562 A.2d at 1166. Jurisdiction over the fund enables a court to prevent such inequity by assessing fees out of the entire fund, spreading the burden proportionately among those benefitted. *Boeing Co. v. Van Gemert,* 444 U.S. at 478, 100 S.Ct. at 749. *See also Sprague v. Ticonic National Bank,* 307 U.S. 161, 166–67, 59 S.Ct. 777, 779–80, 83 L.Ed. 1184 (1939); *Central Railroad & Banking Co. v. Pettus,* 113 U.S. at 126–27, 5 S.Ct. at 392–93; *Maurer v. International Re–Insurance Corp.,* 95 A.2d at 833. Accordingly, the doctrine provides that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. at 478, 100 S.Ct. at 749. *See also CM & M Group, Inc. v. Carroll,* Del.Supr., 453 A.2d 788, 795 (1982); *Maurer v. International Re–Insurance Corp.,* 95 A.2d at 830.

■ Class action suits which result in the recovery of money exemplify the classic creation of a common fund.[5] *See CM & M*

---

2. *See* John Leubsdorf, *Toward a History of the American Rule on Attorney Fee Recovery,* 47 Law & Contemp. Probs. 9 (1984).

3. The British Rule, conversely, is based on a centuries old statutory provision which allows an award of attorney's fees and costs to the prevailing party. *See Alyeska Pipeline Serv. Co. v. The Wilderness Society,* 421 U.S. 240, 247–64, 95 S.Ct. 1612, 1616–25, 44 L.Ed.2d 141 (1975).

4. In an action brought pursuant to a statute with a fee-shifting provision, a successful plaintiff will recover attorney's fees from the defendant. *See Skelton v. General Motors Corp.,* 860 F.2d 250, 252 (7th Cir.1988).

5. In Delaware, there is no class action or derivative suit prerequisite, however, to an award of attorney's fees under the common benefit exception. The "[i]mposition of a class action requirement would be inconsistent with the equitable foundations of the common benefit exception.... The form of suit is not a deciding factor; rather, the question to be determined is whether a plaintiff, in bringing a suit either individually or representatively, has conferred a benefit on others." *Tandycrafts, Inc. v. Initio Partners,* Del.Supr., 562 A.2d 1162, 1166 (1989) (quoting *Reiser v. Del Monte Properties Co.,* 605 F.2d 1135, 1139–40 (9th Cir.1979)). *Accord Sprague v. Ticonic National Bank,* 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939) (holding that "the absence of an avowed class suit ... hardly touch[es] the power of equity in doing justice as

*Group, Inc. v. Carroll,* 453 A.2d at 795. The record supports the Court of Chancery's determination that the settlement of this case resulted in the creation of a common fund for the benefit of the class. Accordingly, Goodrich's attorneys, whose efforts resulted in the creation of that common fund, are entitled to receive a reasonable fee and reimbursement for expenses from that fund. *Weinberger v. UOP, Inc.,* Del.Ch., 517 A.2d 653, 654–55 (1986); *Chrysler Corp. v. Dann,* Del.Supr., 223 A.2d 384, 386 (1966).

### Fee Application
### Common Fund Doctrine

▮▮▮ In a class action, the attorney for the plaintiff initially seeks judicial approval of any proposed settlement. Ch.Ct.R. 23(e). *Skelton v. General Motors Corp.,* 860 F.2d 250, 253 (7th Cir.1988). Since a class action is fiduciary by nature, before a settlement is approved the Court of Chancery must make an independent determination, through the exercise of its own business judgment, that the settlement is intrinsically fair and reasonable. *Nottingham Partners v. Dana,* Del. Supr., 564 A.2d 1089, 1103 (1989). The Court of Chancery's role has been characterized as the "third-party" to the settlement. *Id.* An essential component of that approval process is "a judicial determination that the adequate representation requirement of Rule 23(a)(4) has been satisfied." *Prezant v. DeAngelis,* Del.Supr., 636 A.2d 915, 924 (1994). *See also Matsushita Electric Industrial Co., Ltd. v. Epstein,* —— U.S. ——, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996).

▮▮▮ If the settlement of a class action is approved and has provided for a monetary recovery, the common fund doctrine permits an attorney to independently request an award of fees from that same settlement fund. *See Maurer v. International Re–In-*

*surance Corp.,* 95 A.2d at 831; *Central Railroad & Banking Co. v. Pettus,* 113 U.S. at 124–25, 5 S.Ct. at 391–92. At that point, "the plaintiffs' attorney's role changes from one of fiduciary for the clients to that of a claimant against the fund created for the clients' benefit." *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993) (quoting Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 255 (1985)).

This divergence of interests requires a court to continue its "third-party" role in reviewing common fund fee applications. "[T]here is often no one to argue for the interests of the class," because class members with small claims often do not file objections to proposed settlements and fee applications. *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d at 516. *See Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1265 (D.C.Cir.1993). *See also* Rutherglen, *Better Late Than Never: Notice and Opt Out at the Settlement Stage of Class Actions,* 71 N.Y.U.L.Rev. 258 (1996).[6] The defendant who contributed to the fund also will usually have no interest in how the fund is divided between the class and the plaintiff's attorney.[7] *Swedish Hospital Corp. v. Shalala,* 1 F.3d at 1265.

This case is illustrative of those dynamics. First, there was a relative paucity of objections from the 581,000 class members. Second, although E.F. Hutton had a reversionary interest in the undisposed portion of the settlement fund, it agreed to take no position with regard to Goodrich's application for attorney's fees.

▮▮▮ Therefore, the Court of Chancery's review of common fund attorney fee applications must be more than "cursory." *See Nottingham Partners v. Dana,* 564 A.2d at 1102. We hold that a request for an award

---

between a party and the beneficiaries of his litigation").

**6.** Professor Rutherglen has recommended that the current structure of Federal Rule 23 be amended to afford greater rights to class members: "in particular, to give them the right to receive effective notice later in the proceedings and the right to opt out at the settlement stage of class actions in order to register their dissatisfaction with the performance of the class attorney."

Rutherglen, *Better Late Than Never: Notice and Opt Out at the Settlement Stage of Class Actions,* 71 N.Y.U.L.Rev. 258, 261 (1996).

**7.** Professor Rutherglen has also noted, as a general proposition, that "a better means of protecting the interests of the class can be found than by relying upon the interests of its adversary." Rutherglen, 71 N.Y.U.L.Rev. at 259.

of attorney's fees from a common fund must be subjected to the same heightened judicial scrutiny that applies to the approval of class action settlements. *Id.* Consequently, we hold the Court of Chancery must make an independent determination of reasonableness on behalf of the common fund's beneficiaries, before making or approving an attorney's fee award. *Id. See also* Ch.Ct.R. 88. *Accord In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 821 (3d Cir.1995).

### Fee Award History
### Common Fund Doctrine

■ The equitable nature of awarding attorney's fees from a common fund requires a court to exercise broad discretion by applying a reasonableness standard. The appropriate method a court should use to determine a reasonable attorney's fee to be awarded from a common fund has been the subject of considerable debate. Originally, fees were calculated and awarded as a reasonable percentage of the common fund. *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881). Thereafter, the percentage approach was used to make fee awards in common fund cases for almost one hundred years.

In the 1970s, courts began to use the "lodestar" approach to calculate fee awards in common fund cases. *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167–68 (3d Cir.1973). *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237, 242 (1985). That method requires a court to calculate the product of an attorney's reasonable hours expended on the litigation and reasonable hourly rate to arrive at the "lodestar." [8] *Swedish Hosp. Corp. v. Shalala,* 1 F.3d at 1266. That lodestar calculation can then be adjusted, through application of a "multiplier" or fee

enhancer, to account for additional factors, *e.g.,* the contingent nature of the case and the quality of an attorney's work. *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir.1976); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d at 1266. During the 1970s, the "lodestar/multiplier" method of awarding fees was frequently invoked in common fund cases, instead of determining a reasonable percentage of recovery from the fund, based upon a multifactor analysis. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 716–19 (5th Cir.1974) (*"Johnson"* factors); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d at 164–69 (*"Lindy"* factors).

In the 1980s, however, two events led to a reconsideration of the lodestar method of calculating common fund fee awards. First, in 1984, the Supreme Court distinguished the calculation of awards under fee-shifting statutes from the calculation of attorney's fees under the common fund doctrine. In doing so, the Supreme Court suggested that an award in a common fund case should be based upon a percentage of the fund:

> Unlike the calculation of attorney's fees under the "common fund doctrine," where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [42 U.S.C.] § 1988 reflects the amount of attorney time reasonably expended on the litigation.

*Blum v. Stenson,* 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984). Footnote 16 in *Blum* has been cited for the proposition that the Supreme Court's approval of the lodestar method in the fee-shifting context was not intended to overrule decisions which had approved percentage of the fund awards of attorney's fees in common fund cases. *Swedish Hosp.,* 1 F.3d at 1268. *See, e.g., Sprague v. Ticonic National Bank,*

---

**8.** The lodestar is determined by multiplying the hours reasonably expended by plaintiffs' counsel by a reasonable hourly fee. *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973). In the fee petition, plaintiffs' counsel submits the total lodestar calculation, along with supporting time records, fee schedules and affidavits of counsel, to the court for review. *See* Ch.Ct.R.

**88.** *Rode v. Dellarciprete,* 892 F.2d 1177, 1190–91 (3d Cir.1990). Under the lodestar method, the court must make a dual inquiry into reasonableness: first, whether it was reasonable to expend the number of hours claimed, and second, with regard to the reasonableness of the hourly rate sought. *Ursic v. Bethlehem Mines,* 719 F.2d 670, 676–77 (3d Cir.1983).

307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). That interpretation of *Blum* did not change when the Supreme Court held that the lodestar should not be enhanced through the use of a multiplier in statutory fee-shifting cases. *City of Burlington v. Dague,* 505 U.S. 557, 565–67, 112 S.Ct. 2638, 2642–44, 120 L.Ed.2d 449 (1992).

The second significant event in the 1980s was the report issued in 1985 by a Task Force the Third Circuit had appointed to evaluate the practical effectiveness of the lodestar method in making attorney fee awards. *See* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. 237 (1985). The Task Force recommended continued use of the lodestar technique in statutory fee-shifting cases. *Id. See also City of Burlington v. Dague,* 505 U.S. at 562, 112 S.Ct. at 2641 (acknowledging, in the statutory fee-shifting context, "a strong presumption that the lodestar represents the reasonable fee"). The Task Force concluded, however, that all attorney fee awards in common fund cases should be structured as a percentage of the fund. Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. at 255.

At the present time, the majority of federal courts use a reasonable percentage of the fund method when making attorney fee awards in common fund cases. *See Swedish Hosp. Corp. v. Shalala,* 1 F.3d at 1266 (chronicling history of the methodologies). *See*

*also* FEDERAL JUDICIAL CENTER, AWARDING ATTORNEYS' FEES AND MANAGING FEE LITIGATION 63–64 (1994) (canvassing case law.) [9] The Third Circuit has recently held that the percentage of the fund is generally the preferable method for awarding fees in common fund cases, but noted that a lodestar analysis might be used to cross check the propriety of the award (a "hybrid" approach).[10] *See In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d at 821. Ultimately, however, the Third Circuit permits the trial court to exercise its discretion in choosing *either* the percentage method *or* the lodestar method, *or* some combination or hybrid, as the circumstances warrant, in making common fund fee awards. *Id.*

### Goodrich's Contention
### Reliance Upon Boeing Rationale

■ Federal common fund attorney's fee jurisprudence is not binding upon the Court of Chancery or this Court. *Tandycrafts, Inc. v. Initio Partners,* 562 A.2d at 1165 n. 1. *Sugarland Industries, Inc. v. Thomas,* Del. Supr., 420 A.2d 142 (1980). Nevertheless, its history is didactic in the context of this case, for the purpose of evaluating the Court of Chancery's fee award and Goodrich's arguments.

The Court of Chancery found that the amount of fees Goodrich's attorneys sought, computed as approximately 16% of the total settlement fund before the court, was "perfectly appropriate and well within the guide-

---

9. The D.C. Circuit and the Eleventh Circuit require the use of the percentage method in common fund cases. *See Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C.Cir.1993); *Camden I Condominium Assoc., Inc. v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991). At least five other circuits leave it to the trial court's discretion to choose between the lodestar and percentage methods in common fund cases. *See In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litigation,* 56 F.3d 295, 306–308 (1st Cir.1995); *In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1295 (9th Cir.1994); *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir.1993); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560 (7th Cir.1994); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 454 (10th Cir.), *cert. denied,* 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988). *But see In re Continental*

*Illinois Securities Litigation,* 962 F.2d 566, 572–73 (7th Cir.1992) (leaving method of calculation discretionary but expressing a preference for percentage method). Although the Sixth Circuit has acknowledged the methodologies used in the other circuits, it "require[s] only that awards of attorney's fees ... in common fund cases be reasonable under the circumstances." *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d at 516. Accordingly, the Sixth Circuit leaves it to the trial court's discretion to choose the method or variation and combination of methods that best account for the exigencies of the particular case before it.

10. *See Strang v. JHM Mortgage Securities Limited Partnership,* 890 F.Supp. 499, 502–503 (E.D.Va. 1995) (cross checking a lodestar and percentage of the fund calculation).

lines that we typically use." According to Goodrich, using the lodestar/multiplier method, the fee request of $515,000 represented a minimal multiplier of the attorneys' basic lodestar of $449,687. Nevertheless, Goodrich does not contend that the Court of Chancery either should have awarded a larger percentage than 16% of the $3.3 million fund to his attorneys, or applied the lodestar method. Instead, Goodrich submits that the Court of Chancery applied erroneous legal precepts and abused its discretion by conditioning the fee award, *i.e.,* limiting the fee to one-third of the amount actually claimed by class members from the settlement fund, subject to a maximum fee of $515,000.

Goodrich argues that the Court of Chancery should have followed the *ratio decidendi* of *Boeing* in this case. In *Boeing,* the Supreme Court rejected the defendants' argument that the plaintiff's attorney's fee should be limited to the percentage of the fund actually claimed by class members. The *Boeing* opinion affirmed the trial court's conclusion that attorney's fees should be awarded as a percentage of the total common fund created for the benefit of the class, whether or not the class claimed the entire fund. Goodrich submits that the Supreme Court's reasoning in *Boeing* is logically correct and that it also leads to an equitable result from the perspective of both the class and plaintiff's counsel.

### Goodrich Fee Award
### Distinguishable from Boeing

In *Boeing,* the Supreme Court affirmed the trial court's discretionary decision to award attorney's fees based upon a percentage of the common fund created, even when it was known that certain class members would not file claims. The Supreme Court did not adopt or recommend that methodology as a *per se* rule for federal courts to use in common fund cases. Instead, it was simply applying the appropriate deferential standard of appellate review to a discretionary ruling by the trial court.

Moreover, the Court of Chancery recognized that the context of the *Boeing* fee award was distinguishable from this case in at least two important respects. First, ac-

cording to the Supreme Court, "[t]he judgment on the merits stripped Boeing of any present interest in the fund" created by the judgment. *Boeing Co. v. Van Gemert,* 444 U.S. at 482 n. 7, 100 S.Ct. at 751 n. 7. In *Boeing,* each holder of convertible debentures was the beneficiary of a judgment against Boeing in a fixed amount. Boeing's right to any unclaimed part of that amount was "latent." *Id.* at 482, 100 S.Ct. at 751. In this case, E.F. Hutton's present interest in any remainder of the "common fund" was "vested." The Settlement provided that to the extent attorney's fees, settlement administration costs, and payments of valid claims by class members did not reach $3.3 million, the balance would be released from escrow and returned to E.F. Hutton.

Second, in *Boeing,* the absent class members were characterized as being "at least the equitable owners of their respective shares in the recovery." *Id.* at 482, 100 S.Ct. at 751. In this case, the amount to be paid to absent class members depended on the extent to which class members submitted claims. The Settlement provided that, if the claims submitted were to exceed $3.3 million, the amount to be paid to claiming class members would be prorated downward. Thus, unlike *Boeing,* this is not a case in which "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479, 100 S.Ct. at 749. *Cf. id.* at 476, 100 S.Ct. at 748.

### Goodrich Fee Award
### Equitable and Reasonable

■ In this case, the Court of Chancery recognized the merit of the arguments which support a general preference for the immediate lump-sum payment of an attorney's fee award, that has been determined by the reasonable percentage of the fund method, when a common fund is created. It also acknowledged the merit of the emerging judicial consensus that the percentage of recovery awarded should "decrease as the size of the [common] fund increases." Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,* 108 F.R.D. at 256. *See also* 3 HERBERT B. NEWBERG & ALBA CONTE, NEW-

BERG ON CLASS ACTIONS § 14:03, at 14–13 to 14–14 (3d ed. 1992). The Court of Chancery concluded, however, that it would not be desirable to adopt *Boeing* as a *per se* rule that awarded attorney's fees as a percentage in relation to the maximum common fund available, without regard to the benefits actually realized by class members.

The Court of Chancery's rejection of *Boeing* as a *per se* rule is not novel or unique. In fact, it is supported by the leading century-old precedent the *Boeing* decision relied upon with approval. *See Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). In *Pettus,* attorney's fees were awarded also in a class action based upon the claims actually submitted, rather than the total common fund. *Id.*

In this case, the Court of Chancery used the percentage of recovery method. It also increased the percentage of the award from 16½% to 33⅓% when it reduced the measure of benefits. The Court of Chancery concluded, however, that the $3.3 million settlement might not be an accurate quantification of the actual benefits conferred by the attorneys' efforts:

> In summary, ... this form of order seemed equitable, and within the sound discretion of the court, in this instance because the particular facts of the case raise a very significant risk that some portion and perhaps a large portion of the total fund available for payments to the class will in fact not be distributed to the class members. This is so for several reasons. First the class is very large and the "losses" that class members may have suffered, if the claims made are assumed to be valid, are quite small. Moreover the transaction costs that class members will necessarily encounter in making a claim are relatively high. Members of the class will need to have complete brokerage records going back over the entire period to make a full claim and will need to locate and search such records. It is quite likely

that many and perhaps most class members will not be able to or motivated to make such a claim. In fact, ... for some class members with smaller transaction totals, if one assumes even a modest opportunity cost in searching out old records, it will be economically irrational to make a claim. Thus, the order limited the fee awarded to one-third of the benefits actually delivered to class members.

Goodrich has a three-part response to that ruling in this appeal. First, Goodrich contends that to limit the award of attorney's fees to a percentage of the settlement fund *claimed* unfairly penalizes the attorneys whose efforts created the common fund, by conditioning payment on events beyond the attorneys' control. Second, Goodrich argues that the condition which the Court of Chancery placed on the fee award "penalize[s] [his attorneys] unfairly for the practical difficulties of administering the settlement based upon the potentially small size of individual claims; the need for claimants to establish their claims by producing transaction records; and the passage of time [ten years]." Third, Goodrich argues that the Court of Chancery has permitted E.F. Hutton to benefit at the expense of the plaintiff's attorneys and the class, by causing a portion of the attorney's fee award to revert as part of the unclaimed settlement fund.

Goodrich's arguments demonstrate the equity in the Court of Chancery's decision. The condition precedent to invoking the common fund doctrine is a demonstration that a common benefit has been conferred. The Court of Chancery expressed concern about whether the common fund was an accurate quantification of the actual benefit that had been conferred in this case. By conditioning the award of attorney's fees upon the claims actually submitted, the Court of Chancery exercised its discretion equitably, to correlate the attorneys' compensation with the structure of the settlement benefits the attorneys had negotiated for the class.[11]

---

11. Consistent with the equitable nature of the common fund doctrine, the Court of Chancery's fee structure eliminated any settlement "freeriders." The order provided for the total potential attorney's fee of $515,000 to be deducted from the total $3.3 million common fund, along with administrative expenses and costs, up to a combined total of $1.1 million. Thereafter, the $2.2 million balance of the common fund would be paid out to each class claimant on a *pro rata*

■ This case establishes, once again, that the Court of Chancery's existing multiple factor approach to determining attorney's fee awards remains adequate for purposes of applying the equitable common fund doctrine. *Tandycrafts, Inc. v. Initio Partners,* 562 A.2d at 1167. *See Sugarland Industries, Inc. v. Thomas,* Del.Supr., 420 A.2d 142, 150 (1980); *Maurer v. International Re-Insurance Corp.,* Del.Supr., 95 A.2d 827 (1953). *See also* 3 ERNEST FOLK, III, RODMAN WARD, JR., & EDWARD P. WELCH, FOLK ON THE DELAWARE GENERAL CORPORATION LAW § 327.6.1 (3d ed.1991). *Compare* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, THIRD § 24.121, at 190-91 (1995).[12] The adoption of a mandatory methodology or particular mathematical model for determining attorney's fees in common fund cases would be the antithesis of the equitable principles from which the concept of such awards originated. *Trustees v. Greenough,* 105 U.S. 527, 26 L.Ed. 1157 (1881); *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). New mechanical guidelines are neither appropriate nor needed for the Court of Chancery. *Sugarland Industries, Inc. v. Thomas,* 420 A.2d at 150. *Accord Tandycrafts, Inc. v. Initio Partners,* 562 A.2d 1162 (1989); *Maurer v. International Re-Insurance Corp.,* Del. Supr., 95 A.2d 827 (1953).

### Conclusion

The Court of Chancery carefully crafted a reasonable fee award that will fairly compensate successful attorneys and encourage continued vigilance by the bar. *Maurer v. International Re-Insurance Corp.,* Del.Supr., 95 A.2d 827 (1953). *See In re General Motors Pick-Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d at 819-20. There is no basis in the record to disturb that exercise of its discretion. *Sugarland Industries, Inc. v. Thomas,* 420 A.2d at 149. *See also Prezant v. DeAngelis,* 636 A.2d at 925. The judgment of the Court of Chancery is affirmed.

basis. The Court of Chancery's order further provided for attorney's fees to be paid from the $515,000 that had been set aside, at a *rate* equal to one-third of the value of claims filed. Any unpaid portion of the attorney's fee award would revert to E.F. Hutton, as would any other unpaid portion of the fund. If the Court of Chancery had not ordered the $515,000 to be deducted from the common fund initially, but simply paid from one-third of the award to each claimant, the initial claimants would have contributed to the $515,000 fee award in its entirety, while later claimants would not have contributed to the fees at all.

12. The Federal Judicial Center's Manual for Complex Litigation, Third provides:

An award of attorneys' fees in a common fund case is committed to the sound discretion of the trial court, considering the unique factors in the case. The court awarding such a fee should articulate reasons for the selection of the given percentage [or other method] sufficient to enable a reviewing court to determine whether the percentage [or other method] selected is reasonable. The factors used in making the award will vary, but may include one or more of the following:

—the skill and efficiency of the attorneys involved;

—the complexity and duration of the litigation;

—the risk of nonpayment;

—the amount of time devoted to the case by plaintiffs' counsel; and

—the awards in similar cases.

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION, THIRD § 24.121, at 190-91 (1995).