**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| IMO THE LAST WILL AND | ) | |
| TESTAMENT OF ALEXANDER | ) | C.A. No. 2022-0602-CDW |
| GROOMS | ) | |

**ORDER RESOLVING MOTION
FOR COSTS AND ATTORNEY'S FEES**

**WHEREAS:**

A.      This action is a Caveat Against the Allowance of an Instrument as a Will through which the original petitioner, Inesha Renae Grooms ("Original Petitioner"), sought to invalidate the Last Will and Testament of Henry Alexander Grooms ("Will"), admitted to probate on July 1, 2022.[1]

B.      After Original Petitioner passed away in 2023, the personal representative of her estate, Lisa Blackston ("Petitioner"), was substituted as petitioner,[2] with leave to proceed *in forma pauperis*.[3]

C.      On February 26 and 27, 2025, the court held trial on the petition.[4] At the conclusion of trial, the court held that Petitioner had not carried her burden to prove that Mr. Grooms lacked testamentary capacity when he

---

[1] Verified Pet. Contesting the Will of Henry Alexander Grooms, Docket Item ("D.I.") 1; Ans. to Caveat Against the Allowance of an Instrument as a Will, D.I. 13.

[2] *See generally* D.I. 26, 28, 32, 35.

[3] Appl. and Aff. to Proceed *In Forma Pauperis*, D.I. 27.

[4] Judicial Action Form, D.I. 56.

executed the Will or that he was unduly influenced when making the Will.[5] The court thus ruled in favor of Respondents and recommended that the Will be deemed valid.[6]

D.      After the court's ruling, Respondent Wilson requested leave to file a motion to recover his attorney's fees and costs from Original Petitioner's share of the estate, which the court granted.[7] On March 3, Respondent Wilson filed the motion.[8] On March 10, Petitioner filed her opposition.[9]

E.      The court reviewed the parties' papers and evaluated the arguments made therein, and considered the applicable law and the court's assessment of the parties' conduct and demeanor during this litigation.

**IT IS ORDERED**, this 5th day of June, 2025, that:

1.      Respondent Wilson's motion is GRANTED in part and DENIED in part. Specifically, the court grants Respondent Wilson's motion for costs but denies his motion for attorney's fees.

---

[5] D.I. 56; Tr. of Post-Trial Bench Report, D.I. 58 ("Tr.") 24, 27.

[6] D.I. 56; Tr. 27.

[7] Tr. 27–28.

[8] Mot. for Costs and Att'y's' Fees, D.I. 57 ("Mot.").

[9] Obj. to Payment of Att'y Fees, D.I. 59.

**Costs**

2.    Under Court of Chancery Rule 54(d) "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs."[10] "While the use of the term 'shall' implies that this Court should award costs to the party it deems to have prevailed, the Court has wide discretion in awarding or apportioning costs in each particular case."[11] Ordinarily, "the prevailing party is entitled to costs unless the facts of the particular case are such as to make this clearly inequitable,"[12] and the losing party bears the burden to show why an award of costs would be inequitable.[13] In reaching its decision, "[t]he [c]ourt may also consider the financial circumstances of the individual [litigant]. The [c]ourt is more likely to require [prevailing parties] to bear the costs . . . where the [c]ourt finds that an assessment of costs against [the losing

---

[10] Ct. Ch. R. 54(d).

[11] *Adams v. Calvarese Farms Maint. Corp.*, 2011 WL 383862, at *3 (Del. Ch. Jan. 13, 2011). *See also* 10 *Del. C.* § 5106 ("The Court of Chancery shall make such order concerning costs in every case as is agreeable to equity.").

[12] *Gaffin v. Teledyne, Inc.*, 1993 WL 271443, at *3 (Del. Ch. July 13, 1993).

[13] *Bey v. Leake*, 2024 WL 4443021, at *6 (Del. Ch. Oct. 8, 2024) (citing *In re Oracle Corp. Deriv. Litig.*, 2023 WL 9053148, at *3 (Del. Ch. Dec. 28, 2023); *see also In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462–63 (3d Cir. 2000) (holding the same under Fed. R. Civ. P. 54(d)).

party] would impose a 'severe financial hardship' and would probably 'become an uncollectible assessment serving no real purpose.'"[14]

3.    The court finds that an award of costs to Respondent Wilson is appropriate under Rule 54(d).  Petitioner has not met her burden to rebut the presumption and show why an award of costs would be inequitable.  Indeed, Petitioner does not discuss the matter at all, devoting the entirety of her five-page opposition to Respondent Wilson's request for attorney's fees.[15]  So the court could award costs under Rule 54(d) for that reason alone.

4.    But the court also finds that an award of costs to Respondent Wilson is appropriate on the merits.  The court is mindful that Petitioner is proceeding *in forma pauperis*, so there is some question whether Petitioner has the financial means to pay the costs sought.  Respondent Wilson has anticipated this and proposes that the court, rather than direct Petitioner to pay costs, authorize Respondent Wilson to deduct costs "from any distribution of inheritance . . . made to Petitioner via the Estate of Inesha Grooms."[16]  The court finds that this is an appropriate and equitable way to implement Rule

---

[14] *Cf. Nelson v. Feldman*, 2011 WL 531946, at *2 (Del. Super. Jan. 26, 2011) (citing *Legros v. Jewell*, 2001 WL 660106, at *1 (Del. Super. Mar. 30, 2001)) (denying prevailing party costs under Super. Ct. R. Civ. P. 54(d) against an opposing party of "very modest means").

[15] *See generally* D.I. 59.

[16] Mot. ¶ 14.

54(d)'s presumption in favor of an award of costs without potentially causing financial hardship to Petitioner.[17]

5.    The court recommends that Respondent Wilson's motion for an award of costs under Rule 54(d) be granted, that he be awarded the $234.10 in costs that are substantiated by Exhibit A to the motion,[18] and that such costs be paid not by Petitioner but deducted from whatever share of Mr. Grooms' estate is ultimately awarded to the Estate of Inesha Renae Grooms.

**Attorney's Fees**

6.    Delaware follows the American Rule, which dictates that each party is responsible for their own legal fees unless special circumstances exist.[19]  Respondent Wilson argues the court may shift fees under either the bad faith exception or the common benefit exception to the American Rule.[20]

---

[17] The order granting Petitioner's *in forma pauperis* application states that Petitioner will "[p]ay no fees or court costs" except for "transcript fees and Rule to Show Cause fees" and all fees "related to the use of the Self-Represented Litigant system on File & ServeXpress."  *See* Am. Order on Appl. to Proceed *In Forma Pauperis*, D.I. 31.  The court does not construe this statement, which appears in the court's standard *in forma pauperis* order, as a judicial finding at an early stage that an award of costs under Rule 54(d) will be inequitable under all scenarios if a self-represented litigant is later found not to be the prevailing party.

[18] Mot. Ex. A.

[19] *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 231 (Del. Ch. 1997).

[20] *Id.*; D.I. 57.

7. **Bad Faith Exception.** As the Delaware Supreme Court has explained, "[t]he bad faith exception applies only in extraordinary cases, and the party seeking to invoke that exception must demonstrate by clear evidence that the party from whom fees are sought . . . acted in subjective bad faith."[21] A litigant's conduct must rise to a level of "glaring egregiousness" before this court will find bad faith for purposes of shifting fees,[22] and "merely being adjudicated a wrongdoer . . . is not enough to justify fee shifting."[23]

8. Respondent Wilson argues that the bad faith exception applies for two reasons: Petitioner's claims were baseless, and Petitioner did not meaningfully prosecute those claims.[24] The court rejects both arguments and finds that Petitioner's conduct does not meet the standard for bad faith.

9. First, as to the argument that Petitioner's claims were baseless, "'an award of fees for bad faith conduct must derive from either the commencement of an action in bad faith or bad faith conduct taken during litigation[.]'"[25] Petitioner did not commence this action, so Petitioner could

---

[21] *RBC Cap. Mkts., LLC v. Jervis*, 129 A.3d 816, 877 (Del. 2015).

[22] *eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 47 (Del. Ch. 2010) (citation omitted).

[23] *Id.*

[24] Mot. ¶ 10.

[25] *RBC Cap. Mkts.*, 129 A.3d at 877 (citing *Versata Enter., Inc. v. Selectica, Inc.*, 5 A.3d 586, 607 (Del. 2010)).

not have acted in bad faith by bringing the claim as Respondent Wilson describes.[26]

10.    Petitioner's claim that the Will was invalid failed, but it was not baseless.[27] The Will contains a provision stating that specific bequests "shall be made only if my children do not survive me."[28] This provides some credence to Petitioner's belief—and Original Petitioner's before her—that Original Petitioner was supposed to inherit everything.[29] A self-represented litigant filing a claim based on a sincerely-held belief for the relief they seek is neither "bringing [a] baseless claim[]" nor is it bad faith.[30] Respondent Wilson has failed to show by clear evidence that neither Petitioner nor Original Petitioner sincerely believed their allegations.[31] Petitioner is not an attorney. Nor was Original Petitioner. It is unlikely that a non-lawyer would

---

[26] *See Versata Enter.*, 5 A.3d at 608 (affirming the Court of Chancery's decision to deny fee shifting under the bad faith exception when the substantive basis for fee shifting arose from plaintiff's amended complaint).

[27] *Cf.* 10 *Del. C.* § 8801 (defining factually frivolous claims as "baseless" in the context of an *in forma pauperis* review).

[28] Will, Trial Ex. A at 5. The Will is also on the docket as Exhibit A to Respondent Wilson's Rule 16 Pre-Trial Order, D.I. 55.

[29] *See* Pet'r's (Proposed) Pre-Trial Order, D.I. 53 at 1.

[30] *RBC Cap. Mkts.*, 129 A.3d at 877; *Arbitrium*, 720 A.2d 542, 546 (Del. 1998) (affirming a finding of bad faith when the defendants litigated an action while they "had no defense and *knew it*." (emphasis added)).

[31] *E.g.*, *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005) (holding the party seeking a fee award has a "stringent evidentiary burden").

know their rights to access information through discovery, the potential costs of obtaining discovery, or the heightened burden of proof to invalidate a last will and testament.[32]

11.    Second, as to the argument that Petitioner prosecuted this action in bad faith, Respondent Wilson is correct that neither Original Petitioner nor Petitioner did much to prosecute this case. Indeed, the parties reached trial without, as best the court can tell, a single piece of discovery having been sought by anyone, Respondent Wilson included. But litigating at a truly languorous pace—if that is what happened here[33]—does not by itself come close to meeting the high threshold necessary to find bad faith, especially

---

[32] *See In re Last Will and Testament of Melson*, 711 A.2d 783, 788 (Del. 1998); *Matter of Langmeier*, 466 A.2d 386, 389 (Del. Ch. 1983). The court rejects Respondent Wilson's argument that Original Petitioner's failure to interview every individual named in the Will or involved in its making before she filed this action is evidence of her bad faith. Mot. ¶ 10. Respondent Wilson does not cite, and the court is unaware of, any Delaware authority requiring her to do that.

[33] The point is debatable. Measured solely from when the case began to when it went to trial (nearly 32 months), it is true this case was more tortoise than hare. But the record does not support Respondent Wilson's insistence that this pace was a deliberate, bad faith tactic by either Original Petitioner or Petitioner. Indeed, Original Petitioner passed away on September 14, 2023, a little over 14 months after filing this action, and Petitioner's authority to act as the personal representative of Original Petitioner's estate was not established until March 5, 2024. D.I. 26, 35. The court held trial less than 12 months later. D.I. 56. Hardly the stuff from which "glaring egregiousness" is found.

when the party against whom this fee-shifting sanction is sought is a self-represented litigant like Petitioner who lacks legal training.[34]

12. It also bears noting that Respondent Wilson's argument on this point relies on overheated rhetoric to do the hard work of establishing bad faith. Across just four sentences, Respondent Wilson deploys words and phrases like "vexatious" (three times), "disingenuous," "harassing," "bordering on uncivil, spiteful[,] and vicious," "unserious," and "groundless, needless, and spiteful" to characterize Petitioner's conduct during the trial.[35] The court admits that Petitioner was a challenging litigant and that some of her questioning at trial did veer into areas that were irrelevant or improper, but Petitioner ultimately complied with the court's rulings and when the court instructed witnesses that they did not need to answer certain questions, Petitioner moved on. Petitioner's conduct simply did not, in the court's view, rise to the "glaring egregiousness" level the court looks for when shifting fees.

13. **Common Benefit Exception.** The common benefit exception's purpose is "to prevent 'persons who obtain the benefit of a lawsuit without

---

[34] *See Dover Hist. Soc., Inc. v. City of Dover Plan. Comm'n*, 902 A.2d 1084, 1093 (holding the bad faith exception applies in "extraordinary cases" to "prevent future abusive litigation" tactics). Further, subjective bad faith requires an "actual intent to do harm." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64 (Del. 2006). The court is not convinced there is clear evidence Petitioner's conduct was intended to harm Respondents.

[35] Mot. ¶ 11.

contributing to its cost [from being] unjustly enriched at the successful litigant's expense.'"[36]  The common benefit doctrine requires the creation of a benefit which, "absent [a party's] efforts, *would not exist*."[37]  To shift fees under this exception, the attorney must also "recover[ a] benefit to persons other than [their] client" from the action.[38]

14.     Respondent Wilson argues that the common benefit exception applies here because "those persons named as heirs within the valid Will received a substantial benefit, and Respondent[Wilson]'s defense and trial presentation caused such benefit to come about and be recognized."[39]

15.     The court rejects this argument.  Respondent Wilson's defense of this litigation recovered no additional benefit for Mr. Grooms' estate.  The court's only task at trial was to determine if the Will was invalid, either because Mr. Grooms lacked testamentary capacity when he executed the Will or because he was unduly influenced when making it.  The court's ruling did not create or recover any additional benefit for or bring any additional assets

---

[36] *Dover Historical Soc.*, 902 A.2d at 1090 (quoting *Goodrich v. E.F. Hutton Grp., Inc.*, 681 A.2d 1039, 1044 (Del. 1996)).

[37] *Cf. Moore v. Davis*, 2011 WL 3890534, at *2 (Del. Ch. Aug. 29, 2011) (discussing the common fund exception in the context of a partition).

[38] *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1252–53 (Del. 2012).

[39] Mot. ¶ 8.

into Mr. Grooms' estate. The Will was already admitted to probate.[40] If this litigation had never started, the real-world impact would be the same—the Will deemed valid and governing the estate's administration.

16. "An administrator is bound to defend the estate . . . against claims which [they do] not think just[.]"[41] The value Respondent Wilson alleges he created was already imparted to the estate by virtue of him accepting his position as administrator. Consequently, Respondent Wilson's success litigating this matter—as any administrator is obligated to— acquired no additional value for the beneficiaries.

17. Moreover, even if Respondent Wilson's defense of this action created a common benefit for Mr. Grooms' estate, Respondents Wilson and Peterkin and the Estate of Inesha Renae Grooms (represented by Petitioner) are all beneficiaries of Mr. Grooms' estate under the Will (as Respondent Wilson interprets it). So the costs of conferring any additional benefit on Mr. Grooms' estate would need to be shared between them under the common

---

[40] *See IMO Grooms, Henry Alexander (DOD 6/24/2022)*, Kent Cnty. Folio No. 25650, Will, D.I. 2 at Cover Page (indicating the Will has been admitted to probate).

[41] *Bodley v. Jones*, 65 A.2d 484, 486 (Del. 1948) (citing *Davis v. Rawlins*, 1836 WL 141, at *1 (Del. Super. 1836)).

benefit exception, not borne solely by the Estate of Inesha Renae Grooms as Respondent Wilson requests.[42]

18. The court also finds Respondent Wilson's argument that he has created a common benefit to be untenable, when it is far from clear that his interpretation of the bequests made in the Will, an interpretation he is asserting both in this action[43] and in probate,[44] is in fact the correct one. As the court noted during trial, there are provisions in the Will that conflict with each other regarding Mr. Grooms' testamentary intent.[45] Depending on how that conflict is resolved, the Estate of Inesha Renae Grooms could receive the bulk of Mr. Grooms' estate, instead of the $15,000 bequest that Respondent Wilson asserts is what Mr. Grooms intended to leave Ms. Grooms.[46] If that happens,

---

[42] *See, e.g.*, *Goodrich v. E.F. Hutton Grp.*, 681 A.2d at 1044.

[43] *See* Resp't Wilson's Ans., D.I. 13 ¶¶ 8, 13 (denying Original Petitioner's claims that she was the sole heir and would inherit everything and that Respondent Wilson acted contrary to Mr. Grooms' wishes).

[44] *See IMO Grooms, Henry Alexander (DOD 6/24/2022)*, Kent Cnty. Folio No. 25650, Inventory, D.I. 13.

[45] Tr. 30.

[46] The court declined to resolve this issue during trial because the court viewed it as beyond the scope of a proceeding challenging the validity of the Will's creation by Mr. Grooms and more appropriate for resolution through probate. Tr. 29–30. On March 27, 2025, Petitioner filed a new action challenging Respondent Wilson's administration of Mr. Grooms' estate and seeking Respondent Wilson's removal as administrator. *See Blackston v. Wilson*, C.A. No. 2025-0323-CDW (Del. Ch.).

Respondent Wilson's defense of this action will not have created any benefit, let alone a common one.

19. The court therefore recommends that Respondent Wilson's motion for an award of attorney's fees be denied.

20. This is a final report. Under Court of Chancery Rule 144(d)(1), any party taking exceptions to this report or to a prior report issued in this case must file a notice of exceptions by June 16, 2025.

/s/ *Christian Douglas Wright*
Magistrate in Chancery