This is a tax case, where it is undisputed that the legal authority to collect the tax had expired and that the taxpayers are entitled to a refund of the amounts they paid. The amount of the refund is not at issue. What is at issue is the trial court's award of prejudgment interest and its award of attorney fees.
The facts are as follows:
On October 12, 1954, the City of Ozark ("the City") held a special election to authorize a special ad valorem tax to provide funds to build a new high school in the City. The tax was approved for the period beginning October 1, 1955, and ending September 30, 1985. By mistake, the City continued to collect the taxes for two more years, through September 30, 1987.[1]
Johnny Trawick, individually, and as representative of the class ("the Class") composed of all persons who had owned land situated within the City during the period October 1, 1985, through September 30, 1987, and who had paid taxes as assessed for that period after the authorized 30-year period had expired, and who desired a refund of the taxes paid during that two-year period, sued the City for a refund and sought prejudgment interest on those amounts and reasonable attorney fees. The City counterclaimed, seeking to have any taxpayer's refund offset by the amount of ad valorem taxes the taxpayer had failed to pay. The trial court entered a judgment for the Class, which reads in part as follows:
 "4. That the total number of taxpayers who paid the taxes in question during the tax period in question and who did not desire a refund is 503. *Page 362 
 "5. That the total number of taxpayers who paid the taxes in question during the period in question and who desire a refund [is] 4,106.
 "6. That the class is entitled to interest on its refund entitlement under the authority of Sims v. White, 522 So.2d 239 (Ala. 1988) (a case involving a question of valuation of property and excessive assessment thereof in which the Court, applying Ala. Code 1975, § 40-3-25, held that the taxpayer was entitled to an award of prejudgment interest on the tax refund he received).
 "7. That the total amount of refunds to which the [Class] is entitled is as follows:
A-Refund $222,192.04 B-Prejudgment Interest $127,145.65 ----------- C-Total $349,337.69
 "8. The court finds that this is an appropriate case for an award of attorney fees and expenses from the refund produced as a result of the efforts of the attorneys for the Class and in light of the work done, the expertise of the lawyers, the results obtained for the Class and other factors, the court finds that a reasonable fee for the attorneys in this cause is thirty three and one-third percent of the amount recovered for the Class ($349,337.69) and such money [$116,445.90 for attorney fees] is hereby awarded as a charge against the refund collected [and shall be deducted from the total refund amount which shall result in a reduction in thirty three and one-third pro-rata reduction in the net disbursal to the Class of the refund entitlements].
 "9. That no off-sets have been established by the [City] to refund entitlement of the [Class]."
The City appeals from the trial court's award of prejudgment interest on the refund and from the "lump sum" award of attorney fees in the amount of 1/3 of the total refund ordered. We affirm in part and reverse in part and remand.
The law is well settled, and the parties agree, that absent express statutory authorization, no prejudgment interest can be awarded on refunds of municipal taxes. See Glass v. PrudentialInsurance Co. of America, 246 Ala. 579, 22 So.2d 13 (1945).
The City argues that there is no statutory authority for awarding prejudgment interest on refunds of illegally collected ad valorem taxes such as in this case, because neither of the applicable statutory provisions, Ala. Code 1975, § 40-10-164, or Ala. Code 1975 § 11-51-72, permits the imposition of prejudgment interest. It further argues that Ala. Code 1975, § 40-3-25 (the tax statute upon which the trial court and the Class relied as authority for the award of prejudgment interest) is not applicable in this case because that section governs property valuation and assessment (classification for valuation purposes) and deals with procedures for appealing the property valuations, which is not at issue in this case; and because, the City says, § 40-3-25 does not deal with refunds of ad valorem taxes erroneously paid or collected, such as in this case. According to the City, prejudgment interest is not available on refunds where the basis of the refund is the incorrect levy of a tax, as in this case, as compared to a claim for refund based on an allegedly incorrect assessment of property where the levy is correct.
The Class argues that § 40-3-25 is the applicable statutory authority for the imposition of prejudgment interest. According to the Class, the fact that § 40-3-25 was written in the context of overassessments does not preclude its application to all ad valorem taxes erroneously paid — that is, that §40-3-25 "can be consistently read with all of the other procedural statutes [i.e., § 40-10-164 and § 11-51-72, which provide procedural instructions on how a taxpayer is to file for a refund on taxes paid through an error in assessment or collection and which instruct various local officials as to their respective duties to order and pay refunds found to be owed by the taxpayer through such an error.] It does not require a choice between one or the other."
Section 40-3-25 deals specifically with the process of valuing property and assessing the taxes thereon and with the *Page 363 
procedure for appealing "from the rulings of the board of equalization fixing value of property":
 "If . . . the court is of the opinion that the valuation is either too high or too low, it shall render a judgment fixing such valuation as it may deem fit. . . . It shall decide all questions as to the legality of the assessment and the valuation of the property. . . . The court shall ascertain and determine by its judgment the amount of tax which was invalid or which was excessive . . . paid to the . . . municipalit[y] . . . and thereupon, upon presentation of a certified copy of the judgment to the . . . governing body of [the] municipality, . . . the treasurer of such . . . municipality [is] hereby required to refund such amounts received . . . with interest as herein provided."
(Emphasis added.) Section 40-3-25 is part of "Chapter 3. COUNTY BOARDS OF EQUALIZATION" (§§ 40-3-1 through 40-3-26), which sets forth, among other things, the method of creating a board of equalization, the qualifications for membership on that board, the method of selecting members, the terms of office, the method of filing vacancies, compensation, the duties of the board and its members, the method of reviewing assessments, the procedure for hearing objections to valuations, and the procedure for appealing. Where assessment and valuation of property are not at issue, § 40-3-25 does not apply. In this case, the valuation of property is not at issue. Therefore, §40-3-25 is not applicable.
On the other hand, § 40-10-164 (a provision of Article 6. "REFUND OF TAXES PAID BY MISTAKE OR ERROR," which sets out a statutory refund procedure for taxpayers who have paid a tax through mistake, double assessment, or error on property where no taxes were due, see State v. Ross Grady Insurance Agency,Inc., 48 Ala. App. 578, 266 So.2d 787 (1972)) deals specifically with "Recovery from municipalities, etc.:"
 "In case of the payment of money under mistake of law or fact upon any illegal tax assessment made under color of any law . . . or by any of [the state's] political subdivisions, authorizing the assessment or collection of taxes for any purpose whatever, whether for any municipality, . . . for schools or otherwise, . . . the same shall be recoverable by appropriate proceedings against the proper parties or their successors, with the usual rights of appeal. . . ."
In addition, § 11-51-72 (a provision of Article 1. "PROPERTY TAXES, Division 2. Optional method for Levy and Collection of Property Taxes," which sets forth an optional method for assessing[2] and collecting taxes) provides for the "Procedure for recovery of taxes erroneously paid [to a municipality]:"
 "Any person . . . who owns property subject to taxation in said municipality and who, through a mistake or error in the assessment or collection of taxes, has paid to the municipality through the county tax collector money that was not due from him for taxes may file a petition with the . . . municipality asking that a warrant be drawn in his favor refunding to him the money paid and received by the municipality. . . . [I]f proper and full proof of the same is made, the . . . municipality must allow said claim to the amount of municipal taxes received and must order the treasurer or acting treasurer of the municipality to pay the same."
Either § 40-10-164 or § 11-51-72 is applicable to this case, where the City erroneously collected, and the Class erroneously paid, a tax where no tax was due and where the City had no authority to collect the tax. Neither § 40-10-164 nor §11-51-72 authorizes an award of interest on such tax refunds.
Based on the foregoing, under the facts of this case, because the tax refund based on the City's erroneous collection of taxes is governed by § 40-10-164 or § 11-51-72; *Page 364 
and because neither section provides for prejudgment interest, the trial court erred in awarding the Class prejudgment interest. We therefore reverse the award of prejudgment interest and remand the cause for further proceedings consistent with this opinion.
The City does not contest the trial court's determination that a one-third attorney fee is reasonable, but it argues that the trial court erred in awarding a "lump sum" amount that "could prove to be grossly disproportionate to the amounts of the refunds actually collected." The City argues that because there are members of the Class who have indicated no interest in obtaining the refund to which they are entitled, the amount of the "common fund" created by the efforts of the Class's counsel "can only be known after the refund process is completed or as the individual refund is collected," and therefore the trial court's determination of the "lump sum" amount of attorney fees awarded the Class was premature and is in derogation of the American Rule. The City seeks a remand to the trial court for "the administration of the tax refund . . . with the direction that an attorney's fee in the amount ofone-third of each school tax refund sought and paid to anytaxpayer who is a member of the sub-class, be paid directly tothe [Class's] counsel." (Emphasis added.)
According to the Class, a one-third "lump sum" award of attorney fees was not prematurely determined by the trial court, because the Class's counsel, on behalf of the actual final Class (which was established when the opt-out procedure was completed and when the parties stipulated to and the trial court approved the "official list" of Class members and all refund amounts (not accounting for attorney fees)), worked to achieve and achieved an actual benefit to the Class. According to the Class, "[a]ccepting the City's position would result in an inappropriate back-door method of restating the composition of the Class, long after that determination had been made." We agree.
Alabama follows the American Rule, by which attorney fees may be recovered if provided by statute, by contract, or by special equity, such as in proceedings where the attorney's efforts create a "common fund" out of which fees may be paid. SeeReynolds v. First Alabama Bank of Montgomery, N.A.,471 So.2d 1238 (Ala. 1985). The "common fund" doctrine is an equitable principle designed to compensate an attorney whose services on behalf of his client created a fund to which others may also have a claim. See Maryland Casualty Co. v. Tiffin,537 So.2d 469 (Ala. 1988). In order to apply the "common fund" doctrine, there must be a "fund" from which to compensate the attorney; and the attorney's services, rendered for all members of the Class, must have benefited that fund directly. Id.
In this case, the Class's attorneys rendered their services for the benefit of the Class, which was composed of those taxpayers who chose to remain in the Class and who had paid the taxes when no tax was due and when the City had no authority to collect the tax. Those services operated to create a fund for the benefit of all members of the Class in the undisputed amount of $222,192.04[3], from which each member of the Class is entitled to his or her refund. Whether a particular Class member claims the refund to which he or she is entitled from the fund created by the services of the attorney is that Class member's choice, but that individual's right to choose has no effect on the actual benefit bestowed upon the entire Class as a whole by the attorneys in creating the fund or on the proportionate share of fees to which the attorneys are entitled. See Boeing Co. v. Van Gemert, 444 U.S. 472,100 S.Ct. 745, 62 L.Ed.2d 676 (1980); in that case the United States Supreme Court, affirming the Court of Appeals' holding that absentee class members had received a benefit within the meaning of the common fund doctrine, *Page 365 
addressed the question "whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment," 444 U.S. at 473, 100 S.Ct. at 747, and held that the attorney who had recovered the common fund was entitled to a reasonable fee from the fund as a whole:
 "The members of the Class, whether or not they assert their rights, are at least the equitable owners of their respective shares in the recovery [and whether they claim the money or not cannot] defeat each class member's equitable obligation to share the expenses of litigation."
444 U.S. at 481-82, 100 S.Ct. at 751.
Based on the foregoing, we affirm the trial court's award of a one-third attorney fee based on the "amount recovered for the Class." We note, however, that because of our resolution of the issue involving prejudgment interest, the mathematical computation of the attorney fee will be different and the trial court is instructed to enter the award accordingly.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] Upon learning of the mistake, the City called a special municipal election to re-authorize the City to levy the tax beginning October 1, 1987. A majority of the voters approved the continuation of the tax.
[2] The term "assessment" commonly includes the preparation of a list comprising the description of the persons or property liable and an estimate of the value of the property. See Townof Albertville v. Hooper, 196 Ala. 642, 72 So. 258 (1916).
[3] Having determined that the Class was not entitled to prejudgment interest of $127,145.65, we must conclude that the actual benefit to the Class based on the amount of tax refund due was $222,192.04.