COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

Leonard L. Williams Justice Center
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted: October 20, 2017
Date Decided: January 5, 2018

David A. Jenkins, Esquire
Robert K. Beste III, Esquire
Smith, Katzenstein & Jenkins LLP
1000 North West Street, Suite 1501
Wilmington, DE 19801

Chad S.C. Stover, Esquire
Kevin G. Collins, Esquire
Barnes & Thornburg LLP
1000 North West Street, Suite 1500
Wilmington, DE 19801

RE: **The Mrs. Fields Brand, Inc. v. Interbake Foods LLC**
Civil Action No. 12201-CB

Dear Counsel:

This letter constitutes the court's decision on both parties' applications for attorneys' fees and expenses under Section 22(j) of their Trademark License Agreement dated March 16, 2012 (the "License Agreement") as the "prevailing party" at trial. For the reasons explained below, both of the applications are denied.

## I. Background

On April 13, 2016, The Mrs. Fields Brand, Inc. ("Mrs. Fields") filed a complaint against Interbake Foods LLC ("Interbake") asserting various claims arising out of the License Agreement. On November 2, 2016, shortly before trial, Mrs. Fields filed an amended complaint asserting four claims (the "Complaint"). Two days later, Interbake filed an answer and an amended counterclaim asserting

three claims (the "Counterclaim"). The court held a six-day trial on the parties' respective claims beginning on November 9, 2016.

On June 26, 2017, the court issued a 107-page post-trial Memorandum Opinion (the "Opinion") that: (i) ruled in Mrs. Fields' favor on Count I of the Complaint, in part, and on Counts I-III of the Counterclaim in their entirety; (ii) ruled in Interbake's favor on Count I of the Complaint, in part, and on Counts II-III of the Complaint in their entirety; (iii) dismissed Count IV of the Complaint without prejudice for lack of ripeness; and (iv) requested further briefing on the parties' respective requests for an award of attorneys' fees and expenses as the prevailing party under Section 22(j) of the License Agreement.

On July 27, 2017, the court issued an Order of Clarification and Denial of Motion for Reargument in which the court clarified that a certain aspect of Count I of the Complaint that mirrored the relief sought in Count IV of the Complaint was to be dismissed without prejudice for lack of ripeness. On August 7, 2017, the court issued an Order and Partial Judgment documenting the disposition of each of the claims in the Complaint and the Counterclaim, and retaining jurisdiction for the purpose of addressing the parties' respective applications for attorneys' fees and expenses.

On September 18, 2017, Interbake filed an application for an award of attorneys' fees and expenses in the amount of $2,699,924.41, asserting it was the prevailing party at trial under Section 22(j) of the License Agreement. The next day, Mrs. Fields filed an application for an award of attorneys' fees and expenses in the amount of $5,369,178.45, asserting it was the prevailing party at trial. On October 20, 2017, Mrs. Fields and Interbake each filed briefs in opposition to the other side's application for an award of attorneys' fees and expenses.

## II.    Analysis

The Court of Chancery generally adheres to the American Rule with respect to attorneys' fees, under which each party is responsible for paying for the expense of its own counsel.[1] "A recognized exception to this rule applies when a contractual agreement exists between the parties regarding payment of attorneys' fees."[2] In such cases, the court will "routinely enforce provisions of a contract allocating costs of legal actions arising from the breach of a contract."[3]

The License Agreement in this case contains such a provision. Specifically, Section 22(j) of the License Agreement states, in relevant part, that:

---

[1] *Goodrich v. E.F. Hutton Grp, Inc.*, 681 A.2d 1039, 1043-44 (Del. 1996) (citations omitted).

[2] *Dittrick v. Chalfant*, 2007 WL 1378346, at *1 (Del. Ch. May 8, 2007).

[3] *Knight v. Grinnage*, 1997 WL 633299, at *3 (Del. Ch. Oct. 7, 1997).

> [I]f MRS. FIELDS or [INTERBAKE] are [sic] required to enforce this Agreement in any judicial proceeding or appeal thereof, ***the Party prevailing in such proceeding shall be entitled to reimbursement of its reasonable costs and expenses***, including reasonable accounting and legal fees, whether incurred prior to, or in preparation for, or in contemplation of the filing of any written demand, claim, action, hearing or proceeding to enforce the obligations of this Agreement.[4]

Thus, the disposition of each party's application for attorneys' fees and expenses turns on whether it was the "prevailing" party in this action under Section 22(j).

In *Brandin v. Gottlieb*, then-Vice Chancellor Strine construed a similar contractual provision, which provided that "[t]he prevailing party in any action, suit or proceeding shall be entitled to receive from the losing party prompt reimbursement of all reasonable legal fees and disbursements incurred by the prevailing party in connection with such action, suit or proceeding."[5]  After noting "a court of equity's natural tendency to avoid stark rulings where justice seems to require more nuance," the *Brandin* court held that such a tendency "must give way to the court's duty to give effect to the most reasonable reading of" an agreement and suggested that "predominance in the litigation" is the standard to be applied under a "prevailing party" provision.[6]

---

[4] Emphasis added.

[5] 2000 WL 1005954, at *26 (Del. Ch. July 13, 2000).

[6] *Id.* at *27-28.

The Court of Chancery has applied the "predominance in the litigation" standard on several occasions since *Brandin* was decided when resolving disputes under similar prevailing party provisions.[7] The court more recently explained that "[t]o achieve predominance, a litigant should prevail on the case's chief issue."[8] Mrs. Fields and Interbake both agree that these precedents establish the framework for resolving their cross-applications for an award of attorneys' fees and expenses under Section 22(j) of the License Agreement.[9]

This court also has recognized that there may be circumstances where "no party may be regarded as having prevailed."[10] In *Vianix Delaware LLC v. Nuance Communications, Inc.*, for example, the court held "there was no prevailing party and decline[d] both parties' requests for their attorneys' fees and costs" where both

---

[7] *See, e.g.*, *2009 Caiola Family Tr. v. PWA, LLC*, 2015 WL 6007596, at *33 (Del. Ch. Oct. 24, 2015); *Vianix Delaware LLC v. Nuance Commc'ns, Inc.*, 2010 WL 3221898, at *28-29 (Del. Ch. Aug. 13, 2010); *Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505, at *2-3 (Del. Ch. Apr. 27, 2004).

[8] *2009 Caiola Family Tr.*, 2015 WL 6007596, at *33 (citation and internal quotation marks omitted).

[9] Pl.'s Appl. for Fees & Expenses 6 (Dkt. 206); Def.'s Appl. for Fees & Expenses 3-4 (Dkt. 205).

[10] *Vianix*, 2010 WL 3221898, at *28; *see also W. Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC*, 2009 WL 458779, at *8 (Del. Ch. Feb. 23, 2009) (recognizing that "no party may be regarded as having prevailed" in some instances) (citing *AHS New Mexico Holdings, Inc. v. Healthsource, Inc.*, 2007 WL 431051 (Del. Ch. Feb. 2, 2007)); *Dittrick*, 2007 WL 1378346, at *1-2 (declining to shift fees after trial pursuant to a contractual provision entitling the "non-defaulting" party to recover reasonable attorneys' fees).

parties won "on several claims and contentions" and one party recovered "what may be millions of dollars in damages, but far less than it claimed."[11]  Similarly, in *AHS New Mexico Holdings, Inc. v. Healthsource, Inc.*, the court declined to find that either party "prevailed" under a contractual fee-shifting provision where the court denied cross-motions for summary judgment.[12]

The "predominance" standard the *Brandin* court endorsed is an "all or nothing approach" as opposed to a "claim-by-claim application."[13]  Consistent with the holistic approach endorsed in *Brandin*, I decline to parse the parties' level of success claim-by-claim with respect to the seven claims (and subsidiary topics) they advanced in their pleadings and at trial.  Instead, I focus on what was the "chief" issue in this case.  That said, in my opinion, there can be more than one "chief" or core issue in a case, and where—as I find to be the case here—the parties split on two equally core issues, neither can be said to have "prevailed" so as to trigger the contractual entitlement to fee-shifting in the License Agreement.

---

[11] 2010 WL 3221898, at *29.

[12] 2007 WL 431051, at *9-10.

[13] 2000 WL 1005954, at *27-28; *see also Comrie*, 2004 WL 936505, at *2 (recognizing that the "traditional" approach adopted in *Brandin* "is an all-or-nothing approach involving an inquiry into which party predominated in the litigation").

The first core issue in this case was whether Interbake's purported termination of the License Agreement on April 12, 2016 was valid. That purported termination prompted the filing of this lawsuit the next day, on April 13, and Mrs. Fields' request for a temporary restraining order to prevent Interbake from taking any action to terminate the License Agreement. The request for a temporary restraining order was obviated a few days later, on April 18, when the parties stipulated to the entry of a Standstill Order providing that neither party "shall take any action to implement any termination of the License Agreement" and that they would "continue to honor and meet their respective obligations under the License Agreement" until the court issues a ruling after trial.[14]

As the litigation progressed, Interbake advanced a number of additional grounds to validate its purported termination that it had not identified in its original notice of termination. This strategy complicated resolution of the termination issue by injecting into the case numerous subsidiary legal questions, the disposition of which accounted for the bulk of the court's analysis in the Opinion.[15] The termination issue ultimately was decided in Mrs. Fields' favor because each of the

---

[14] Dkt. 11 ¶¶ 2-3.

[15] *See Mrs. Fields Brand, Inc. v. Interbake Foods LLC*, 2017 WL 2729860, at *17-33 (Del. Ch. June 26, 2017). The resolution of the termination issue in Mrs. Fields' favor resulted in a summary disposition of Interbake's request for damages, *id.* at *32, which was a relatively minor issue in the scheme of this case.

grounds for Interbake's purported termination of the License Agreement was found to be invalid.

The second core issue in this case was whether Mrs. Fields was entitled to receive an award of monetary damages from Interbake for harm it allegedly caused to the value of the Mrs. Fields retail cookie business it operated as a licensee under the License Agreement. From the court's perspective, once the Standstill Order was entered (at the outset of the case) and Mrs. Fields was assured that the License Agreement would remain in place until after trial, Mrs. Fields' pursuit of monetary damages became the central focus of its efforts in this case.

Enormous efforts were expended in discovery and at trial through both fact and expert witnesses on issues relating to Mrs. Fields' purported damages, such as the cause of the decrease in the sales of Mrs. Fields' retail cookies during the term of the License Agreement and, relatedly, the cause of an alleged decline in the overall value of the Mrs. Fields brand. For example, virtually all of the members of Interbake's sales force were questioned on these topics. Mrs. Fields submitted a report from a damages expert quantifying its purported damages at $28.7 million, an amount I found to be astounding but which significantly raised the stakes of this litigation for Interbake. Tellingly, Mrs. Fields devoted, by my estimation, most of

the argument sections in its post-trial briefs to its request for damages. Interbake

prevailed on this issue, as I found that Mrs. Fields was not entitled to any damages.

The court's analysis of the legal issues relevant to finding that no contractual

basis existed to support an award of damages to Mrs. Fields consumed significantly

fewer pages in the Opinion than the analysis of the termination issue. This allocation

is not reflective, however, of the relative importance in this case of the termination

issue versus Mrs. Fields' demand for over $28 million in damages. Rather, as

explained in the Opinion, it was not necessary to address the analysis of Mrs. Fields'

damages expert in any great detail because I concluded that Mrs. Fields had failed

to prove a contractual basis for any damages in the first place:

> The damages analysis Mrs. Fields submitted at trial is totally disconnected from the breach of any particular provision of the License Agreement. Instead, working from the vague assumption that "Interbake is found liable" for some unidentified "breach of contract," Mrs. Fields' damages expert, Weston Anson, purported to calculate the difference between the value of the Mrs. Fields retail cookie business between (1) July 1, 2015, when Anson had "seen evidence" that Interbake intended "to leave the license," and (2) September 16, 2016, the date of his report. Tr. 1330-33 (Anson). Based on various assumptions and methodologies, Anson pegged the damages at an astounding $28.7 million—more than fourteen times the minimum annual royalty under the License Agreement. There are many flaws in Anson's analysis, not the least of which was his failure to consider anything that Mrs. Fields—the owner of the brand—did or did not do during the term of the license (such as failing to invest in a refreshment of its brand) that may have caused or at least have contributed to a decline in the value of the business Interbake operated as a licensee. Tr. 1373 (Anson). Given my conclusion that Mrs. Fields failed to prove a

9

breach of any provision of the License Agreement except for Section 11(a), for which Mrs. Fields failed to establish any resulting damages, it is unnecessary to address Anson's opinions further.[16]

In sum, because each side both won and lost on one of the two equally core issues in this case, I hold that neither Mrs. Fields nor Interbake predominated in the litigation and thus neither is entitled to an award of attorneys' fees or expenses as the "prevailing party" under Section 22(j) of the License Agreement.

## III.    Mrs. Fields' Motion to Further Amend its Complaint

I turn now to a different issue.  On December 29, 2017, Mrs. Fields filed a motion for leave to further "amend" the Complaint to assert two new claims for monetary damages in place of the four claims in the Complaint that were adjudicated at trial.  I was surprised to see this motion.

This litigation has gone on for over twenty months.  A full trial on the merits was conducted.  At the conclusion of the post-trial Opinion, the court specifically directed the parties to submit "a form of *final* judgment" that would end the trial court proceedings and trigger the time period for seeking appellate review.[17]  When the court entered the Order and Partial Judgment and "retain[ed] jurisdiction for matters not inconsistent with this Order," the intention was not to invite a new round

---

[16] *Mrs. Fields Brand*, 2017 WL 2729860, at *39 n.345.

[17] *Id.* at 40 (emphasis added).

of litigation, but to resolve the parties' applications for attorneys' fees and expenses and to enter a final judgment as contemplated in the Opinion.[18]

With the foregoing in mind, the court requests short submissions from the parties addressing: (i) whether a final judgment should be entered in this case now and whether any new claims that Mrs. Fields (or Interbake) may wish to assert should be filed in a separate action; and (ii) if the motion to further amend were granted, whether there is any reason the Court should not direct the entry of a final judgment under Court of Chancery Rule 54(b) on all of the issues that have been decided in this case to date. The submissions shall not exceed 2,000 words and are due within ten business days of the date of this letter decision.

## IV.    Conclusion

For the reasons explained above, both of the parties' applications for attorneys' fees and expenses are DENIED, and the parties are directed to file submissions as set forth above. **IT IS SO ORDERED.**

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

---

[18] The court also is concerned that Mrs. Fields is seeking through its motion to shoehorn into a case that has reached its natural conclusion a new round of claims for monetary damages over which the court would not have subject-matter jurisdiction.

11