# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LINDEN GREEN CONDOMINIUM )
ASSOCIATION, )
            )
    Plaintiff-Counterclaim Defendant, )
            )  C.A. No. N17L-11-116 FWW
            )
    v. )
            )
STEPHANIE M. LARKIN, )
            )
    Defendant-Counterclaim Plaintiff. )
            )

Submitted: October 5, 2021
Decided: January 27, 2022

## DECISION AFTER TRIAL

Frances Gauthier, Esquire, LEGAL SERVICES CORPORATION OF DELAWARE, INC., 100 West 10th St., Suite 203, Wilmington, DE, 19801, Attorney for Counterclaim Plaintiff Stephanie M. Larkin.

Paul E. Bilodeau, Esquire, LOSCO & MARCONI, P.A., 1813 N. Franklin St., P.O. Box 1677, Wilmington, DE, 19899, Attorney for Counterclaim Defendant Linden Green Condominium Association.

**WHARTON, J.**

# I. INTRODUCTION

This decision, following a two-day bench trial held on July 12th and July 13th, 2021, resolves Defendant/Counterclaim Plaintiff Stephanie Larkin's ("Larkin") counterclaim against Plaintiff/Counterclaim Defendant Linden Green Condominium Association ("Linden Green"). Linden Green's original complaint was resolved when the Court granted its motion for summary judgment. This decision also resolves Linden Green's request for attorney's fee, costs, and pre-judgment interest on its complaint and Larkin's request for attorney's fees and costs on her counterclaim. During a bench trial, the Court sits as the trier of fact and considers Larkin's claims on their merits. The Court considers the testimony, exhibits, demeanor of the witnesses, and post-trial submissions of the parties, together with the applicable law. The Court's factual findings and legal conclusions are set forth in the opinion below. In summary, the Court finds: (1) for Larkin and against Linden Green in the amount of $18,840.63 on her counterclaim; and (2) Linden Green is entitled attorney's fees, costs, and pre-judgment interest on its complaint, but only as to its complaint. Larkin is not entitled to attorney's fees but is entitled to costs on her counterclaim, but only on her counterclaim.

# II. FACTS AND PROCEDURAL CONTEXT

This action originated when Linden Green filed a complaint against Larkin alleging failure to pay liens and assessments against her and her townhouse unit. In

response, Larkin filed an answer and counterclaimed against Linden Green. After Linden Green filed its answer to the counterclaim, Linden Green then moved for summary judgment on its complaint,[1] on the counterclaim,[2] and *in limine* to preclude Larkin from offering expert testimony in support of her counterclaim.[3] The Court granted Linden Green's motion for summary judgment on its claim[4] and the motion *in limine,*[5] but denied its motion for summary judgment on the counterclaim.[6] In addition to granting Linden Green summary judgment on its complaint for past due monthly assessments of $12,504.75 and late fees of $1,270.00, the Court also granted Linden Green "leave to submit any claim for attorney fees, costs and applicable finance charges at the conclusion of this litigation."[7] In May 2021, Larkin paid the past due assessments and late fees in full.[8] Partial satisfaction of the judgment was entered by the Prothonotary on June 22, 2021[9] pursuant to a power of attorney from Linden Green in which it reserved "the right to pursue further [judgments] against Ms. Larkin …for Court costs, pre and post judgment

---

[1] Linden Green's Mot. Summ. J. on Claim, D.I. 52
[2] Linden Green's Mot. Summ. J. on Countercl., D.I. 54.
[3] Linden Green's Mot. *in Limine*, D.I. 53.
[4] D.I. 64.
[5] D.I. 66.
[6] *Linden Green Condo. Assoc. v. Larkin,* 2020 WL 5890585 (Del. Super. Ct. Oct. 5, 2020), *rearg. den.* 2020 WL 7181370 (Del. Super. Ct. Dec. 4, 2020).
[7] D.I. 66.
[8] D.I. 95.
[9] D.I. 99.

finance/interest charges, monthly assessments and late charges owing after July 2021, and such other amounts as may be lawfully owing by Ms. Larkin."[10] Linden Green now seeks those attorney's fees, costs, and finance charges on its successful complaint.

Larkin's counterclaim arises from an alleged failure by Linden Green to comply with its obligations under the Linden Green Enabling Declaration and the Linden Green Code of Regulations.[11] Specifically, Larkin alleges that Linden Green has failed to maintain the common elements of the association, resulting in a defective exterior and foundation, which, in turn, has caused rain to pool and accumulate near Larkin's unit.[12] This accumulation of moisture allegedly has caused mold to grow on the interior surface of the foundation, which has damaged the drywall, baseboards, and hardwood floors of Larkin's townhouse unit.[13] Larkin seeks damages to effect repairs necessary to return Larkin's unit to a safe and sanitary condition, as well as damages to her HVAC system and personal property.[14] For the first time, Larkin seeks costs and attorney's fees, despite not requesting them in her counterclaim.

---

[10] D.I. 95.
[11] Larkin's Answer and Countercl., D.I. 26.
[12] *Id.* at 9-10.
[13] *Id.*
[14] *Id.*

4

At trial Larkin testified herself and presented three other witnesses – Alyanna Burton, Chris DiMarco and Bobby Friant – and 40 exhibits. Aylanna Burton is Larkin's daughter. Chris DiMarco is the co-owner of the property management company that manages Linden Green. Bobby Friant is an employee of ServPro who was engaged to provide remediation and repair estimates. Linden Green's witnesses were Chris DiMarco and John Meredith. John Meredith is an HVAC technician who worked on Larkin's system. Linden Green presented two exhibits.

At the conclusion of trial, the Court solicited post-trial submissions from the parties. Among other things the trial testimony presented six specific issues the Court asked the parties to address.[15] They are:

1) Whether expert evidence is necessary to prove Linden Green is liable for damage to Larkin's home or whether other evidence can be relied on to prove causation?

2) A specific itemization of damages for each claimed item.

3) Who is responsible for the cost of the HVAC system?

4) Whether punitive damages should be awarded.

5) Any additional issues either party would like the Court to consider.

6) Should Linden Green should receive attorney's fees?[16]

---

[15] D.I. 113, Trial Tr. 252.
[16] *Id.,* at 252-254.

## III.  THE PARTIES' CONTENTIONS

In response to the questions proposed by the Court, Larkin asserts: (1) expert testimony is not necessary to prove causation and pictures of the townhouse unit are sufficient; (2) Linden Green should be liable for $97,449.39 in damages for its negligence and breach of fiduciary duties; (3) Linden Green should be held liable for the replacement cost of Larkin's HVAC system; (4) the Court should impose punitive damages against Linden Green at three times the regular damages; (5) Linden Green failed to comply with a reserve study, and acted in retaliation when it prevented Larkin from using the Linden Green pool; and (6) the Court should award attorney's fees to Larkin rather than Linden Green.[17]

Linden Green claims in its Answer: (1) Larkin did not meet her burden of proving causation because an expert is required; (2) remediation would amount to only $3,376.53 because Larkin failed to mitigate her damages; (3) Larkin is not entitled to damages for her HVAC unit, rugs, or couch set; (4) Larkin is not entitled to punitive damages; (5) the additional claims raised by Larkin are barred; and (6) only Linden Green is entitled to attorney's fees and costs.[18]

---

[17] Larkin's Op. Mem., at 2-3, D.I. 88.
[18] Linden Green's Ans. Mem., at 20-21, D.I. 106.

## IV.    STANDARD OF REVIEW

In a bench trial, "the Court is the factfinder, and the plaintiff must prove each claim by a preponderance of the evidence. A preponderance of the evidence exists upon 'the side on which the greater weight of the evidence is found.'"[19]  "Because the Court is the finder of fact, it is up to the Court to weigh the credibility of witnesses and resolve conflicts in witness testimony."[20]

## V.    DISCUSSION

### A.    Expert Evidence is not Necessary to Prove Linden Green is Liable for Damages to Larkin's Home.

The first question the Court addresses is whether expert evidence is necessary to prove Linden Green is liable for damages to Larkin's home, or whether other evidence can be relied on to prove causation.[21]  The Court concludes that expert evidence is not necessary to prove causation because the photographs submitted into evidence are sufficient proof.  The Delaware Supreme Court has held, while expert testimony is required when a claim requires the proof of facts that are not common knowledge of laymen, "[t]here may be cases where the source of mold is arguably within the common knowledge of laymen. For example, where black mold is

---

[19] *Patel v. Patel*, 2009 WL 427977, at *3 (Del. Super. Feb. 20, 2009)(quoting *Reynolds v. Reynolds*, 237 A.2d 708, 711 (Del. 1967)).
[20] *Masterson-Carr v. Anesthesia Svcs., P.A.*, 2015 WL 5168557, at *3 (Del. Super. Aug. 28, 2015).
[21] D.I. 113, Trial Tr. 252:11-20.

growing on the ceiling of an apartment at a place where water is leaking[.]"[22] Larkin submitted multiple photographs into evidence depicting the mold in her unit as well as the wet foundation.[23] The source of the mold is clearly visible to the naked eye and within the common knowledge of laymen. Therefore, expert evidence is not required.

**B.      Linden Green is Responsible for Certain Damages.**

Having concluded that expert testimony is not necessary to determine the source of the mold in Larkin's unit, the next logical conclusion is that exterior leaks were the cause. Again, this conclusion is plainly obvious from the extensive photographic evidence.[24] Accordingly, Linden Green is responsible for certain damages caused by the water and mold.

**C.      Larkin is Entitled to Repair and Remediation Costs and Lodging Expenses.**

The Court requested a "specific itemization of damages."[25] The Court finds Larkin is entitled to $18,840.63 for repair and remediation costs for her damaged unit as well as lodging expenses. It is the plaintiff's responsibility to prove damages by a preponderance of the evidence. Damages must be proven by a "fair degree" of

---

[22] *Campbell v. DiSabatino*, 947 A.2d 1116, 1118 (Del. 2008).
[23] *See, e.g.,* Larkin Ex. 13.
[24] Linden Green arguably acknowledged that the building's foundation "has structural issues that have caused water/moisture to penetrate into Ms. Larkin's unit." Larkin Ex. 34.
[25] D.I. 113, Trial Tr. 253:4-14.

precision[26] and "[r]easonable estimates are permissible even if they lack mathematical certainty if the Court is given a reasonable basis to make a responsible estimate of damages."[27] Repair estimates are acceptable devices to measure damages.

Larkin offered the testimony of Bobby Friant of ServPro to establish repair and remediation costs for her unit. Friant testified the total costs for repair and remediation amount to $15,340.63,[28] broken down as $3,575.65 for interior remediation, $8,995.82 for interior repairs, $293.06 for general repairs, and $2,294.10 for storage of equipment during repairs.[29] The Court finds this testimony credible and accepts it. Therefore, this Court awards Larkin $15,340.63 for repair and remediation.

Larkin claims she is entitled an increase of the $15,340.63 due to a rise in prices for supplies during the COVID-19 pandemic.[30] Linden Green argues that Larkin failed to mitigate her damages by refusing it entry[31] However, Larkin failed establish what that increase might be, either through proof quantifying such an enhancement or reasonable estimates at trial. Thus, any enhancement the Court

---

[26] *Laskowski v. Wallis*, 205 A.2d 825 (Del.1964).
[27] *CIT Technology Financing Services v. Owen Printing Dover, Inc.*, 2008 WL 2586683 (Del. Super. April 30, 2008).
[28] D.I. 113, Trial Tr. 100:1.
[29] Larkin Ex. 40.
[30] Larkin's Op. Mem., at 12, D.I. 88.
[31] Linden's Green Mem., at 12-15., D.I. 106.

might award necessarily would be speculative. Accordingly, the Court finds she is not entitled to any enhancement of the repair and remediation costs. Linden Green's failure to mitigate argument has some superficial appeal, but in the Court's view, both parties share some of the blame for the repairs not being done sooner. The Court does not grant the reduction Linden Green seeks.

Larkin is entitled to $3,500 for lodging expenses for the time work is to be done in her unit. During trial, Larkin testified hotel lodging could be had for $100 a night while the repairs to her unit were taking place.[32] Bobby Friant testified that repairs would take approximately four to six weeks.[33] Based on that testimony, and taking the middle of the estimated time, Larkin is entitled to five weeks of lodging at a rate of $100 a night, amounting to $3,500.

**D.    Larkin is Not Entitled to Diminished Value Costs, Damage to Personal Property Costs, Towing Charges, or Post Judgement Interest.**

Larkin, for the first time, on the eve of trial advised Linden Green that she intended to seek damages for the "diminished use" of her townhouse.[34] The Court refused to allow that untimely claim.[35] The Court sustained Linden Green's objection regarding damages for "diminished value" of Larkin's property because those damages were not asserted in her counterclaim's prayer for relief, nor were

---

[32] D.I. 113, Trial Tr. 39:18.
[33] D.I. 113, Trial Tr. 103:1.
[34] Linden Green's Ans. Mem., at 5, D.I. 106.
[35] *Id.*

10

they asserted in pre-trial any submissions.[36]  Larkin had ample time to amend her counterclaim to include these damages but did not.[37]  Nonetheless, despite being barred at trial from introducing any evidence concerning those "diminished use" claims, Larkin inexplicably seeks them in her post-trial memorandum.  The prejudice to Linden Green was manifest at trial and remains manifest post-trial.  The Court will not entertain claims for "diminished value."

Larkin is not entitled to the cost of her area rugs, or the cost of her 5-piece sectional couch set that were allegedly ruined due to water damage.  During trial, Larkin presented evidence in the form of photographs depicting damage to two area rugs in her unit as well as a 5-piece sectional couch set.[38]  In *Bennett*, this Court held that the plaintiff was not entitled to damages for personal property because no evidence was offered to reflect the depreciated value of those items.[39]  Here, no testimony or evidence was introduced by Larkin showing any depreciated value in the area rugs purchased in 2014 or the 5-piece couch set purchased in 2013.  Accordingly, no damages are awarded.

---

[36] *See* Pre-Trial Stipulation and Order, D.I. 97.
[37] Such claims likely would involve expert testimony.  Larkin made no expert disclosures and Linden Green had no opportunity to retain an expert.
[38] Larkin Exs. 38, 39.
[39] *Bennett, Debra & William v. Plantations E. Condo. Assoc., Inc.*, No. CIV.A. S12C-04-002ES, 2013 WL 493329, at *2 (Del. Super. Ct. Jan. 16, 2013).

Larkin claims damages for an illegal towing charge. She asserts that Linden Green towed her vehicle in retaliation for her withholding the unpaid assessments to Linden Green following a default judgment Linden Green's favor.[40] Larkin provided insufficient evidence to prove by a preponderance of the evidence that the temporary tags on her vehicle were not expired at the time of towing. While Larkin produced some evidence, namely the picture of a replacement tag, she did not provide any testimony or evidence that this replacement tag was on the vehicle at the time of towing.[41] Furthermore, the license plate number on the temporary tag in the picture in evidence is different from the one listed on the tow receipt.[42] Larkin did not provide any evidence that Linden Green requested the towing of her vehicle, or any evidence that Linden Green contacted the police after the towing. There is no reason the believe that Larkin's vehicle was towed for any reason other than it was perceived to be illegally parked with an expired registration. Therefore, damages are not awarded for any claim regarding the towing of Larkin's vehicle.

Larkin requests post-judgment interest on any damages awarded in under 6 *Del. C.* § 2301(a) and (d). Section 2301(d) states:

> In any tort action for compensatory damages in the Superior Court … seeking monetary relief for … property damage, interest shall be added to any final judgment entered for damages awarded, calculated at the rate established in subsection (a) of this section, commencing from the

---

[40] Larkin's Op. Mem., at 14, D.I. 88.
[41] Larkin Ex. 28.
[42] *Id.*

12

date of injury, provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered.[43]

No evidence was provided to the Court that prior to trial Larkin extended the written settlement demand required by § 2301(d). Therefore, this Larkin is not entitled to any post-judgment interest.

Based on the evidence provided at trial, Larkin is entitled to a total of $18,840.63, which consists of $15,340.63 for repair and remediation costs and $3,500 for lodging costs.

**E.      Larkin is Not Entitled to Partial Damages for Her HVAC System.**

The Court requested that the both parties present arguments on the responsibility for any claimed damage to Larkin's HVAC unit as well as the value of any damage to the unit.[44] Larkin claims to be entitled to $7,490 for the replacement of her HVAC system because Linden Green's agents were the cause of the HVAC system's failure.[45] Linden Green asserts insufficient evidence was produced to demonstrate the HVAC unit was not functioning after being reconnected by John Meredith, the First State Contractor approved by Linden Green.[46] The Court agrees and accepts Meredith's testimony that the unit was working after his visit.

---

[43] 6 *Del. C.* § 2301(d).
[44] D.I. 113, Trial Tr. 253:15-21.
[45] Larkin's Op. Mem., at 16, D.I. 88.
[46] Linden Green's Ans. Mem., at 9, D.I. 106.

13

Moreover, the unit was well past its life expectancy and there is ample reason to believe it ceased functioning for that reason. In any event, even if Linden Green was responsible for its failure, it is Larkin's responsibility to prove damages by a preponderance of the evidence.[47] No evidence was presented establishing the depreciated value of the HVAC unit as required in *Bennett*.[48] Because of the insufficiency of evidence as to the cause of the system's failure and the absence of evidence as to the depreciated value of the HVAC unit, the Court does not award damages to Larkin for the HVAC unit.

**F.      Larkin is Not Entitled to Punitive Damages.**

Larkin is not entitled to punitive damages because Linden Green's conduct was not willful or malicious. Larkin claims she is entitled to treble punitive damages because of Linden Green's breach of its fiduciary duty of loyalty and its gross negligence and reckless indifference to addressing the water issues.[49] The high standard for imposing punitive damages in contract cases requires that the breach be willful or malicious.[50]

---

[47] *Meyer & Meyer, Inc. v. Brooks*, 2009 WL 2778426, at *3 (Del. Com. Pl. May 19, 2009).

[48] *Bennett, Debra & William v. Plantations E. Condo. Assoc., Inc.*, 2013 WL 493329, at *2 (Del. Super. Ct. Jan. 16, 2013).

[49] Larkin's Op. Mem., at 18, D.I. 88.

[50] *Casson v. Nationwide Ins. Co.*, 455 A.2d 361, 368 (Del. Super. Ct. 1982).

Whatever fiduciary duty of loyalty Linden Green may have had to Larkin, she failed to prove it was breached because she did not allege that any Council member used his position for personal gain. Pursuant to 25 *Del. C.* § 81-111, punitive damages must be specifically provided for in that chapter or by other rule of law.[51] Elected Council members are subject to the same degree of care and loyalty required by a director of a Delaware non-profit corporation.[52] Linden Green is comprised of elected Council members, and each member has the same duty of care and loyalty that a director of a non-profit would have. The duty of loyalty requires that Council members refrain from using their positions for personal gain.[53] Here, no such allegations were made nor was any evidence produced showing this type of breach. Therefore, a claim for punitive damages based on a violation of the duty of loyalty is unfounded.

Larkin alleges gross negligence or reckless misconduct by Linden Green due to its failure to repair her townhouse unit promptly after she reported water damage. She also alleges that Linden Green retaliated against her for her failure to pay her assessments. A willful or malicious breach of contract must be present for punitive damages to be appropriate.[54] Here, Linden Green did not willfully or maliciously

---

[51] 25 *Del. C.* § 81-114.
[52] 25 *Del. C.* § 81-303(a).
[53] *In re Woods v. Shara Enterprises, Inc.*, 238 A.3d 879, 895 (Del. Ch. 2020).
[54] *Casson,* at 368.

15

breach the contract it had with Larkin. Larkin alleges that Linden Green did not take comprehensive action to repair the building when water damage became known. However, the evidence shows attempts by Linden Green to make repairs to the building. Furthermore, Larkin denied access on multiple occasions when those repairs were attempted to be made.[55] The court finds Linden Green's conduct was neither willful, nor malicious.

Larkin argues the suspension of her parking privileges for non-payment of assessments was a willful and malicious breach of a privilege due to her.[56] Pursuant to §81-302(a)(11), Linden Green properly chose to suspend Larkin's parking privileges for non-payment of assessments.[57] At the time Larkin's spot was removed, she was six months delinquent on her assessments.[58] Larkin's additional claim that a hearing date was not provided by Linden Green does not prove a willful or malicious breach of contract required for punitive damages. She is not entitled to any punitive damages, much less treble punitive damages.

## G. Additional Allegations are Barred.

The Court did not intend to limit the parties in their post-trial memoranda to arguing only the issues it asked them to address. So, it invited them to discuss any

---

[55] D.I. 113, Trial Tr. 72:14-17; 120:1-7; 123:19-20.
[56] Larkin's Op. Mem., at 23, D.I. 88.
[57] *See,* D.I. 113, Trial Tr. 146-48.
[58] D.I. 113, Trial Tr. 171-72.

16

other issues raised at trial appropriate for post-trial submissions.  It was not an open invitation to relitigate matters already decided.[59]  Nevertheless, Larkin asserts claims regarding a reserve study by Linden Green, denial of pool access to her, and Council members owning multiple units in the building.[60]  The Court sustained an objection at trial to an attempt to introduce evidence regarding a reserve study.[61]  Claims involving a denial of access to the pool and council members owning multiple units were excluded during the pre-trial conference.[62]  All three of these claims were previously ruled on by the Court and will not be considered now.

## H.    Attorney's Fees, Costs, and Interest.

Finally, the Court addresses each side's request for attorney's fees and costs and Linden Green's request for pre-judgment interest.[63]  Linden Green seeks costs and attorney's fees of $116,554.06,[64] while Larkin asks for $113,955.31.[65]  Together attorneys' fees and costs exceed $230,000.[66]  The criteria for awarding fees are well

---

[59] D.I. 113, Trial Tr. 254:13-15.
[60] Larkin's Op. Mem., at 24-28, D.I. 88.
[61] Linden Green's Ans. Mem., Tab 1 at 189, D.I. 106; *see also*, D.I. 113, Trial Tr. 78-79.
[62] Pre-Trial Stipulation and Order at 20, 22-23, D.I. 97.
[63] D.I. 113, Trial Tr. 254:16-18.
[64] Linden Green's Ans. Mem., Ex. 4, at 8, D.I. 106.
[65] Larkin's Op. Mem., at 36, D.I. 88.
[66] No doubt much could be said about this figure and the costs of litigation generally, but not here.

established.[67]  Delaware follows the "American Rule" by which "prevailing litigants are responsible for the payment of their own attorney's fees."[68]  A court may not order the payment of attorney's fees  "'unless the payment of such fees is authorized by some provision of statute or contract.'"[69]

Linden Green is entitled to attorney's fees on its complaint pursuant to Linden Green's Code of Regulations and 25 *Del. C*. § 81-316(g), but Larkin is not on her counterclaim. The Linden Green's Enabling Declaration states all occupants are subject to and shall comply with the Code of Regulations.[70]  The Code of Regulations entitles Linden Green to "reasonable attorneys" fees, incurred in the collection of the delinquent assessment by legal proceedings or otherwise[.]"[71] According to 25 *Del. C*. § 81-316(a), Linden Green is entitled to its court costs and reasonable attorney's fees on any judgment.  Furthermore, § 81-316(g) states any judgment originating under this section "must include costs and reasonable attorney's fees for the prevailing party."  On March 11, 2020 this Court entered

---

[67] *Brice v. State, Dept. of Correction,* 704 A.2d 1176, 1178 (Del. 1998) (citing *Goodrich v. E.F. Hutton Group, Inc.,* 681 A.2d 1039, 1043-44 (Del. 1996).
[68] *Id.*
[69] *Mullen v. Ascetta,* 2021 WL 5710899, at *2 (Del. Supr. Ct. Dec. 2, 2021) (quoting *Driesbach v. Walton,* 2014 WL 5426868, at *5 (Del. Super. Ct. Oct. 27, 2014) (citing C*asson v. Nationwide Insurance Co.* 455 A.2d 361, 370 (Del. Supr. Ct. Sept. 20, 1982)).
[70] Larkin Ex. 3, at 10.
[71] Larkin Ex. 4, at 18.

judgment in favor of Linden Green on its foreclosure action brought under 25 *Del. C*. § 81-316. Therefore, Linden Green is entitled to costs attorney's fees. In its post-trial memorandum Linden Green has submitted an itemized request for attorney's fees and costs in the amount of $116,554.06. That amount represents attorney's fees and costs for the entire litigation, including Larkin's counterclaim. The Court does not award attorney's fees and costs for that portion or the litigation since Linden Green did not prevail, nor does it find such costs and fees compelled by statute or regulation. Linden Green is entitled only to attorney's fees and costs related to its original complaint.

Linden Green also seeks pre-judgment interest at the rate of 18% on Larkin's delinquent balances from July 15, 2016 until Linden Green's Council repealed the interest charge on March 1, 2018. Title 25 *Del. C*. § 81-316(g) states, "[u]nless the declaration provides for a different rate of interest, interest on unpaid assessments shall accrue at the rate of the lesser of 18% per annum or the highest rate permitted by law."[72] Pursuant to its declaration and regulations, in May 2009, Linden Green increased the interest rate to 18%.[73] Thus, Linden Green is entitled to pre-judgment interest at 18% on Ms. Larkin's delinquent balances from July 15, 2016, until Linden Green's Council repealed the interest charge on March 1, 2018.

---

[72] 25 *Del. Code* § 81-316(a).
[73] Linden Green's Ans. Mem, at 26, D.I. 106.

Larkin requests attorney's fees and costs of $113,955.31.[74]  Her counterclaim made no specific request for either.[75]  Nonetheless, she relies on 25 *Del. C.* § 81-417 in support of her request.  That section provides:

> If a declarant or any other person subject to this chapter fails to comply with any of its provisions or any provision of the declaration or bylaws, any person or class of persons adversely affected by the failure to comply has a claim for appropriate relief.  The court, in an appropriate case may award court costs and reasonable attorney's fees.

Larkin argues that she is someone adversely affected by Linden Green's failure to comply with its bylaws and declarations.  However, she makes no compelling substantive argument why the Court should depart from the "American Rule" followed in Delaware and the Court declines to do so.

Costs are assessed differently than attorney's fees.  The general rule is that "Ordinary court costs are usually allowed to a prevailing party[.]"[76]  This rule reflects 10 *Del. C.* § 5101 – "Generally a party for whom final judgment in any civil action, or on a writ of error upon a judgment is given in such action, shall recover, against the adverse party, costs of suit, to be awarded by the court."  The determination of whether to award costs is a matter of judicial discretion.[77]  But,

---

[74] Larkin's Op. Mem., at 36, D.I. 88.  Larkin promises to supplement this amount at the conclusion of briefing.  *Id.*

[75] Larkin's Ans. and Countercl., D.I. 26.

[76] *Casson,* at 369.

[77] *Driesbach*, at *4.

"costs shall be allowed as of course to the prevailing party upon application to the Court within ten (10) days of the entry of final judgment unless the Court otherwise directs."[78] Both parties have requested costs for the entire case. Here, the case was bifurcated, with each party prevailing on the portion of the case in which it was the plaintiff. Because Linden Green prevailed on its complaint 25 *Del. C.* § 81-316(g) requires the Court to award it costs. But it did not prevail on Larkin's counterclaim, and thus, it is not entitled to costs on the counterclaim. The Court exercises its discretion to award costs to Larkin on her counterclaim only since that is the part of the case on which she prevailed.

## VI.   CONCLUSION

**THEREFORE,** the Court finds in favor of Larkin and against Linden Green in the amount of $18,840.63. Costs are awarded to her only as to her counterclaim. Attorney's fees are not awarded. Larkin shall submit an appropriate application for costs on her counterclaim consistent with this Order no later than February 11, 2022. Linden Green shall submit any objections to Larkin's application no later than February 25, 2022.

The Court further finds that Linden Green is entitled to reasonable attorney's fees and costs, but only as to its complaint. Linden Green shall submit a revised application for attorney's fees and costs consistent with this Order no later than

---

[78] Super. Ct. Civ. R. 54(d).

21

February 11, 2022. Larkin shall submit any objections to Linden Green's revised application no later than February 25, 2022.

The Court further finds that Linden Green is entitled to pre-judgment interest at the rate of 18% per annum on any delinquencies from July 15, 2016 to March 1, 2018. Linden Green shall submit a calculation of that interest no later than February 11, 2022. Larkin shall submit any objections to that calculation no later than February 25, 2022.

The Court will issue a Final Order after it considers the parties' submissions.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.